[No. 2378]

## J. F. FORD, RESPONDENT, *v.* R. FRED BROWN, APPELLANT.

[200 Pac. 522]

1. TRIAL—FINDING IN SPECIAL VERDICT HELD CONCLUSION OF LAW.
   Finding of a jury that the instructions of a principal to his broker to sell stock amounted to a revocation of former instructions to the broker is a conclusion of the law, and beyond the province of the jury, returning a special verdict in view of Civil Practice Act, sec. 279, providing that a "special verdict" shall present conclusions of fact as established by the evidence, and that those conclusions shall be so presented that nothing shall remain to the court but to draw from them conclusions of law.

2. TRIAL—SPECIAL VERDICT FINDING FACTS NOT PUT IN ISSUE HELD VOID; "SPECIAL VERDICT."
   Where a revocation of instructions of a principal to his broker was not put in issue by pleadings, a finding in a special verdict concerning the revocation of instructions is inoperative and void, though evidence of facts claimed to show revocation was admitted without objection, as a "special verdict" is a special finding by the jury on each material issue of the case.

3. ESTOPPEL—FINDINGS HELD NOT TO SHOW EQUITABLE ESTOPPEL WHERE RELIANCE ON MISREPRESENTATIONS OR SILENCE IS NOT FOUND.
   Where the broker did not exercise proper diligence in selling stock when so instructed by his principal, and there is no finding that the broker relied upon misrepresentations or silence of his principal, the findings do not show an equitable estoppel.

4. ESTOPPEL—RELIANCE ON ACT OR CONDUCT ESSENTIAL TO "ESTOPPEL IN PAIS."
   Essential element of an "estoppel in pais" is that the party relying thereon was influenced by the acts or silence of the other to act as he would not otherwise have done, to his prejudice.

5. TRIAL — CONCLUSIONS IN SPECIAL VERDICT PROPERLY DISREGARDED.

In an action against a stockbroker for failure to sell stock according to instructions, the court properly disregarded conclusions of the jury contained in a special verdict that both parties were at fault, and that therefore plaintiff was precluded from recovering full damages, and defendant was liable for the costs.

APPEAL from the Fifth Judicial District Court, Nye County; *Mark R. Averill,* Judge.

Action by J. F. Ford against R. Fred Brown. From judgment for plaintiff, and from an order denying a new trial, defendant appeals. **Affirmed.**

*Hugh Henry Brown,* for Appellant:

The selling order, upon which the whole action is grounded, was revoked. The special finding of the jury on the revocation of the selling order controls, precludes any general finding or judgment in favor of plaintiff, and was controlling upon the trial court. The alleged contingency upon which the selling order was conditioned never happened.

The finding of revocation of the selling order was conclusively proven by documentary evidence. It could not be revived unless by some later affirmative act of plaintiff, which the jury found had not taken place. "An agent's authority may be revoked by the principal subsequently granting an inconsistent power to him." 2 C. J. 538. "An authority to sell is subject to revocation at any time before a sale is made." 9 C. J. 520.

The special finding of revocation of the selling order is legally hostile to any recovery by plaintiff. No general finding in favor of plaintiff can stand in the face of a special finding. "Where a special finding of facts is inconsistent with the general verdict, the former controls the latter and courts must give judgment accordingly." Rev. Laws, 5222; Crosman v. S. P. Co., 173 Pac. 225; Abbot, Civil Jury Trial (3d ed.), 820, 838.

The special findings of the jury constitute an estoppel which runs against plaintiff and precludes recovery.

"The vital principle if that one who by his conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectation upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood and the law abhors both." 5 U. S. Cyc. 938; 10 R. C. L. 689, 694; 9 C. J. 532; Ankeny v. Young Brothers, 100 Pac. 736; Gould v. Trask, 10 N. Y. S. 619. "Every consideration of right and justice required the defendant to assert its rights promptly as soon as the default became an established fact." Pokegama Lumber Co. v. Klamath Lumber Co., 96 Fed. 34; Leather Bank v. Morgan, 29 L. Ed. 817; Zell v. Cockran, 60 Atl. 699.

*Milton M. Detch,* for Respondent:

Under no circumstances can appellant prevail, having failed, refused and neglected to carry out respondent's instructions to dispose of stock. A serious attempt has been made by appellant to inject into the case legal problems of the rule of revocation and the doctrine of estoppel. The verdict of the jury nowhere refers to revocation. The doctrine of estoppel is not applicable, as there was no finding by the jury upon which the doctrine could be predicated.

By the Court, DUCKER, J.:

This appeal is taken from a judgment in the court below in favor of respondent, and from an order denying appellant's motion for a new trial.

During the times mentioned in the amended complaint, appellant was a stockbroker doing business as such in the town of Tonopah. It is alleged by the respondent that, on the 3d day of August, 1917, at said town, under his direction, the appellant purchased for him on margin 5,000 shares of the capital stock of the Manhattan Morning Glory Mining Company, for which he agreed to pay 16 cents a share, and the commission of the appellant amounting to $10; and that, under

and by virtue of his contract as to purchasing said stock on margin, he deposited with the appellant the sum of $410; that subsequently, and on or about the 12th day of October, 1917, the respondent directed appellant that, if the Manhattan Morning Glory Mining Company was unsuccessful in the matter of a hearing on an order to show cause why a certain restraining order, which had theretofore been issued in the case then pending in the district court, should not be dissolved, or remain in force and effect, then the appellant was to immediately sell said stock at the market price. It is further alleged, in substance, that, on the evening of the 19th day of October, 1917, a decision was rendered in said cause in favor of the White Caps Mining Company and against said Manhattan Morning Glory Mining Company, and that knowledge of such decision was, within a short time after its rendition, and on the 19th day of October, 1917, conveyed to appellant; that on the 20th day of October, 1917, the market price of said Manhattan Morning Glory Mining Company was quoted on the San Francisco stock exchange at 19 cents per share, and on said day thousands of shares of said stock were disposed of at said price; that appellant failed, neglected, and refused to sell said stock on said day, and did not dispose of said stock; and then, without notice to respondent until the 17th day of December, 1917, when he sold 2,000 shares of said stock at 10 cents per share, and 3,000 shares at 9 cents per share, and after deducting commissions and war tax, credited respondent's account with $459, and tendered to him the sum of $29.80, the amount claimed by appellant to be due respondent on the sale of said stock. Damages in the sum of $491 is alleged, and judgment prayed for in that amount.

The purchase of the stock on margin by the appellant, as a stockholder, as alleged in the complaint, is admitted in the answer. It is also admitted that appellant did not sell any part of the respondent's stock on October 20, 1917, but denied that there was any refusal,

neglect or failure in that respect. It is also admitted that the stock was sold by appellant at the times and at the prices alleged in the complaint; but denied that said sale or sales were without notice to respondent. It is denied therein that respondent directed appellant to sell the stock on the contingency alleged in the complaint; and that any such contingency ever happened, or that appellant received or had any knowledge thereof. It is also denied that appellant failed to follow any selling instructions given to him by the respondent. For a further and separate answer and defense it is alleged:

"III. That some time during the early part of October, 1917, and more than a week prior to the ruling upon an order to show cause, made and entered by the above-entitled court on October 19, 1917, in the case of White Caps Mining Company v. Manhattan Morning Glory Mining Company, the plaintiff ordered the defendant to sell said 5,000 shares of stock at the market if the White Caps Mining Company won said case against the Manhattan Morning Glory Mining Company; that defendant made no entry of said selling order upon the books of the defendant for the following reasons, to wit: First, that the winning or losing of the case of White Caps Mining Company v. Manhattan Morning Glory Mining Company was a matter that could not possibly be determined until the trial of said cause upon its merits, and that said trial and determination necessarily were at least several weeks remote, the said case not yet having been set for trial, and the said case being of such a nature that it would, and thereafter did, require and consume at least four weeks in the trial thereof; and, second, that it is the custom of brokers, and a custom of their trade and business, not to accept selling orders for a longer period than the last business day of a current calendar week, nor to hold selling orders to be effective or operative for a longer period than the last business day of any current calendar week; that said custom is a reasonable custom, intended for the protection both of brokers and their clients, and is a

long-established, continuous, and universal custom of the said brokerage business, and that plaintiff knew of said custom.

"IV. That on October 20, 1917, the day following the ruling and order of the above-entitled court, in said case of White Caps Mining Company v. Manhattan Morning Glory Mining Company, upon an order to show cause, with reference to injunctive process then and there under consideration, the plaintiff was in the defendant's place of business, in Tonopah, Nevada, reading the ruling and order of said court, as reported in the Tonopah Daily Times of said last-named date, and the plaintiff was then and there watching and reading the stock boards which showed sundry sales of the stock of Manhattan Morning Glory Mining Company made on the San Francisco Stock Exchange on October 20, 1917; that the market price of said last-named stock opened on October 20, 1917, at 19 cents, and thereafter declined to lower prices; that the plaintiff did then and there, toward the closing of the trading period on said 20th day of October, 1917, give to the defendant an order to sell 5,000 shares of Manhattan Morning Glory Mining Company stock at 16 cents per share; that the defendant then and there used his best efforts in that behalf, and promptly sent a telegraphic selling order to the defendant's correspondents on the San Francisco Stock Exchange to sell said 5,000 shares at 16 cents per share, but that it proved to be impossible to make such sale at 16 cents, the defendant and his correspondents being unable to get a purchaser at said last-named figure; that the stock of the Manhattan Morning Glory Mining Company declined steadily in price on October 20, 1917, from 19 cents per share to 15 cents per share, 10,000 shares thereof selling at 15 cents, and the market closing at 14 cents bid.

"That thereafter, to wit, on November 16, 1917, the plaintiff gave to the defendant an order to sell said 5,000 shares of stock at 15 cents per share; that the defendant then and there used his best endeavors to

effect such sale in that behalf, and did promptly, on said date, send a telegraphic selling order to the defendant's correspondents on the San Francisco Stock Exchange to sell said 5,000 shares of stock at 15 cents per share, but that the market price on said 16th day of November, 1917, was 14 cents, and that no shares were sold on said date at 15 cents, and that the price of said stock so continued for the balance of said calendar week at 14 cents per share, 8,500 shares selling on the 16th, and 22,000 shares selling on the 17th, and 12,000 shares selling on the 18th, all at 14 cents per share.

"That defendant finally sold said 5,000 shares of stock at times and at prices as alleged in said complaint, but that before selling said stock, or any of it, the defendant personally notified the plaintiff that, by reason of the depreciation in the market price of said stock, it was necessary for the plaintiff to pay to the defendant an additional sum of money in order to cover and protect said margin contract, or that, in the event of the plaintiff's failure so to do, it would be necessary for the defendant to sell said stock; that the plaintiff then and there told the defendant that the plaintiff could not or would not put up or pay to the defendant any more money on account of said margin contract, and that said stock would have to be sold as last hereinabove alleged."

The case was tried before a jury, which returned the following special verdict:

"That the plaintiff is entitled to the sum of $29.80, being the amount admitted by the defendant to be due the plaintiff on account of the Morning Glory stock transaction.

"That the plaintiff directed the defendant to sell his Morning Glory stock under the conditions as alleged in the complaint, and that the defendant neglected to carry out his (the plaintiff's) instructions; but that the plaintiff repudiated the said instructions by his subsequent order, on the 15th of October, 1917, given to the defendant, as shown by the evidence, to sell the said stock at 20 cents, and that thereafter the original order to sell

said mining stock under the conditions as alleged in the complaint was of no further force and effect.

"That thereafter the defendant, according to the evidence, made an effort in good faith to inform the plaintiff that the condition or happening had taken place under which the said stock was to be sold, but that he failed to make known to his client, the plaintiff, the reason for not selling the stock after the said event had occurred because of the previous order given him by the plaintiff to sell the said stock on October 15 at 20 cents.

"That on the said date of October 20 after plaintiff had become informed of his knowledge that the order to sell had not been placed in accordance with his original instructions, the plaintiff did not exercise sufficient regard for his own rights and interest by giving the defendant absolute instructions to sell the said stock at the price then obtainable, namely, 15 cents, or more or less.

"That thereafter, although the said stock was eventually sold at a loss to the plaintiff at the price of 10 cents and 9 cents, as shown by the evidence, in accordance with the notice duly given by the defendant to the plaintiff that the market price of the said stock had reached the point where a further payment was required from the plaintiff to protect his marginal contract, the plaintiff had continued to show a lack of interest, by his silence or otherwise, as to his loss entailed by the selling of the said stock at the said prices of 10 cents and 9 cents per share.

"That by virtue of the plaintiff's acquiescence in this loss as suffered by him in having the said stock sold by the defendant, at the prices of 10 cents and 9 cents, instead of having said stock sold at 19 cents or higher, we believe from the evidence that there was a mutual disregard on the part of both defendant and his client, the plaintiff, to observe strictly the rules and regulations necessary to the full performance of the contract, express or implied, which existed between them.

"We therefore find that the plaintiff is liable in part for his failure to exercise at all times the necessary care and vigilance to protect his interests, and that the defendant is liable in part for his failure to give specific notice or instructions at all times as to the rules and regulations of his business governing the transactions in this case. In view of such finding, we hold that the respective parties in this action are equally, or at least in part, responsible for the failure on the part of the other for the full performance of the contract, and that full damages, as prayed for in the complaint, cannot in justice be awarded in favor of the plaintiff, but that the defendant should be held liable for the costs in this case, and that, in view of these conclusions as to the facts which we have found, the matter of levying the said costs upon the defendant in this action be left to the discretion of the court in accordance with the law in the case."

Upon this verdict the court rendered judgment in favor of respondent for the sum of $491, with legal interest, together with his costs, amounting to $152.25.

The appellant does not question the sufficiency of the verdict of the jury as a special verdict. When the verdict was rendered, his counsel expressly accepted the verdict and withdrew a request previously made by him for answers to interrogations. He concedes that by this special verdict the jury found upon all the issues necessary to a final determination of the cause and the entry of judgment thereon. He contends, however, that the court erred in making findings and rendering judgment in favor of respondent, and that the special verdict warrants a judgment in favor of appellant.

1. On the main issue made by the pleadings, namely, as to whether respondent directed appellant to sell his stock at once if the Manhattan Morning Glory Mining Company was unsuccessful in the matter of the hearing of the restraining order as alleged in the amendment to the amended complaint, or in the event the White Caps

Mining Company won the case, the jury found in favor of respondent. It also found that appellant neglected to carry out his instructions. These findings standing alone would, in this case, clearly warrant the judgment in favor of respondent. But appellant contends the subsequent statement in the special verdict, "that the plaintiff repudiated the said instructions by his subsequent order on the 15th of October, 1917, given to the defendant to sell the said stock at 20 cents, and that thereafter the original order to sell said stock under the conditions as alleged in the complaint was of no further force and effect," destroys the foregoing findings, and amounts to a revocation of the instruction given October 12. The only finding of fact in this statement is that, on the 15th of October, and subsequent to the instructions given to sell immediately in the event of an adverse ruling on the restraining order, respondent ordered appellant to sell said stock at 20 cents. Whether respondent's action in this respect amounted to a revocation of his former instructions is a conclusion of law, which the jury had no right to draw.

The duty of drawing conclusions of law from the facts found in a special verdict, is upon the court. This is elementary law, embraced within the provisions of section 279 of the Civil Practice Act (Rev. Laws, 5221). In part it reads:

"A special verdict is that by which the jury finds the facts only, leaving the judgment to the court. The special verdict shall present the conclusions of fact, as established by the evidence, and not the evidence to prove them; and those conclusions of fact shall be so presented as that nothing shall remain to the court but to draw from them conclusions of law."

See Knickerbocker & N. S. M. Co. v. Hall, 3 Nev. 194.

2. It is not necessary for us to determine whether the fact of the order of October 15, when stripped of the conclusions of law drawn from it by the jury, amounts in law to a revocation of the instructions given

to appellant by respondent on the 12th day of the same month.  It is not alleged in the answer, nor are any facts alleged therein showing that a revocation was pleaded or intended to be pleaded.  The answer was drawn on different theories, as will be observed by reference to it in the statement of facts preceding this opinion.  True, as counsel for appellant contends, evidence was admitted without objection showing that a subsequent order to sell at 20 cents was made, but this cannot aid the finding.  Evidence outside the issues cannot be made the basis of a judgment.  A special verdict is a special finding by the jury on each material issue of the case.  Paxter v. Chicago & N. W. R. Co., 104 Wis. 307, 80 N. W. 644.  If a special verdict finds facts not put in issue by the pleadings, it is so far inoperative and void.  The jury can find only facts which have been submitted to them by the pleadings.

3-5.  Appellant further contends that the jury found facts which constitute an estoppel.  We do not think so.  The estoppel claimed by appellant is an estoppel in pais, or equitable estoppel.  An essential element of such an estoppel is that the party relying upon it was influenced by the acts or silence of the other to act as he would not otherwise have done, to his prejudice.  There is no estoppel in pais when such is not the case.  Sharon v. Minnock, 6 Nev. 377, 399.  Such fact was not found by the jury in its special verdict.  The jury found that both parties were at fault, and concluded that the respondent was therefore precluded from receiving the full amount of damages, and that the appellant was liable for the cost of the action.  The trial court properly disregarded these conclusions.  The jury found that respondent did not exercise sufficient regard for his own rights and interest by giving the appellant absolute instructions to sell the said stock at the price obtainable, namely, 15 cents, or more or less, after he had been informed on October 20, 1917, that the order to sell had not been placed in accordance with his original instructions.

The jury also found that thereafter, although the stock was eventually sold at a loss to respondent at the price of 10 cents and 9 cents, in accordance with the notice duly given by the appellant to respondent, that the market price of said stock had reached the point where a further payment was required from the respondent to protect his marginal contract, he continued to show a lack of interest, by his silence or otherwise, as to his loss entailed by the selling of the stock.

There are also findings in the verdict that respondent acquiesced in the loss suffered by him; that there was mutual disregard between the parties; and that respondent did not observe strictly the rules and regulations necessary to the full performance of the contract.

But nowhere is it found that appellant was misled to his prejudice by respondent's conduct, or that it influenced appellant in any manner whatever. So far as the verdict goes, appellant may have acted in precisely the same way if respondent had notified him that he intended to hold him for a claim for damages for his failure to sell in accordance with the instructions of October 12. On this account we conclude that the estoppel claimed by appellant cannot be drawn from the special verdict.

Appellant also contends that the contingency upon which he was to sell the stock never happened. The jury found that the contingency did happen, and the evidence is sufficient to support this finding.

The judgment must be affirmed.

It is so ordered.