GEORGE BUTLER, BY AND THROUGH HIS GUARDIAN AD LITEM, DAVID BILLER, APPELLANT, *v.* ROBERT BAYER, DIRECTOR, NEVADA DEPARTMENT OF PRISONS; SHERMAN HATCHER, WARDEN, SOUTHERN DESERT CORRECTIONAL CENTER; RICHARD B. SMITH, CORRECTIONS OFFICER; NEVADA DEPARTMENT OF PRISONS; AND THE STATE OF NEVADA, RESPONDENTS.

No. 44749

October 11, 2007 168 P.3d 1055

*David M. Korrey*, Las Vegas, for Appellant.

*Catherine Cortez Masto*, Attorney General, and *Eddie S. Gulbenkian*, Deputy Attorney General, Carson City, for Respondents.

Before the Court EN BANC.

## OPINION

By the Court, MAUPIN, C. J.:

In this appeal, we examine the duty of prison officials to protect incarcerated persons from attacks by other prisoners, and the duty of care owed by prison officials when releasing physically and mentally disabled inmates. We also examine the extent to which the Nevada Department of Corrections, as a state actor, is entitled to discretionary-act immunity in such matters under NRS 41.032(2).[1]

With respect to the duty of prison officials to protect inmates from attacks by other inmates, we adopt the approach taken by the Restatement (Second) of Torts, which defines the duty as one of reasonable care to prevent intentional harm or to avoid an unreasonable risk of harm, when such harm is foreseeable. Harm is foreseeable when prison officials actually know that an inmate is at risk, that the attacking inmate is dangerous, or when prison officials otherwise have reason to anticipate the attack. In this case, as the appellant never informed prison officials that he was afraid for his personal safety, and officials were not otherwise ''on notice'' of an imminent attack, prison officials had no specific duty to protect the appellant from the unforeseeable attack that occurred. Consequently, summary judgment was appropriate on the appellant's claims related to the direct attack.

Regarding the duty of care when prison officials release disabled inmates, we conclude that general negligence standards apply, so that prison officials have a duty to exercise reasonable care to avoid foreseeable harm in releasing a disabled inmate. We further con-

---

[1]NRS 41.032(2), which concerns the scope of Nevada's qualified waiver of sovereign immunity for political subdivisions of the State of Nevada, provides absolute immunity to state actors who are sued in connection with the ''exercise or performance or the failure to exercise or perform a discretionary function or duty.''

clude that the action of releasing inmates does not require consideration of social, economic, or political policy, indicating that prison officials are not entitled to discretionary-act immunity for their actions. Here, because the manner in which prison officials released the appellant, a disabled inmate, could lead a jury to reasonably find that some of appellant's injuries were a foreseeable result of the manner in which he was released, summary judgment on the appellant's claims related to his release was improper.

## FACTS AND PROCEDURAL HISTORY

Appellant George Butler was incarcerated in unit five of the Nevada Southern Desert Correctional Center (SDCC) near Indian Springs, Nevada. In October 1997, a quarrel over a drug debt escalated into a race-based brawl between multiple residents of the unit, including Butler. As a result of the incident, prison officials placed the facility on "lockdown" status. Although Butler had thrown rocks at several brawl participants, he made no request for protection after the altercation and never expressed concern for his safety to prison authorities.

The next morning, respondent Richard Smith, a correctional officer at the prison facility, was assigned to work in the "control bubble" at the center of unit five. Although advised that the prison was on lockdown status, Smith did not know the reason for this security measure. No policy other than common courtesy dictated that officers coming on shift be told the reasons for a lockdown. While on duty, Smith opened the cell doors of the wing of unit five where Butler was housed to allow the inmates to gather in the corridor to await the arrival of a "breakfast escort team." He then left the control bubble to manually release some of the doors in another wing. During this time, a group of inmates involved in the previous day's incident attacked Butler in his cell. Smith was the only correctional officer deployed to the unit during the events in question.

As a result of the attack, Butler suffered permanent spinal cord injury and brain damage, rendering him a spastic quadriplegic. Although he can eat solid food, he must receive supplemental hydration via gastric intubation, *i.e.*, a "g-tube." He cannot speak or write and essentially functions at a ten-year-old level.

Some two years later, given his condition, the Nevada Department of Corrections, then the Nevada Department of Prisons (NDOP), commenced the formulation of a plan for Butler's release. This involved contact with Butler's former girlfriend, Sheila Woods. NDOP caseworker Gloria Lucero-Lawrence met with Woods on at least one occasion to discuss her taking custody of Butler and the necessity of equipping her trailer with a wheelchair ramp, hospital bed, and other medical equipment. Although Woods

expressed concern that she would be unable to make the necessary preparations, she agreed she would "try" to provide housing and care for Butler.

On the day of Butler's release, Lucero-Lawrence arrived at Woods' residence to ensure that Woods was prepared for Butler's arrival. Woods was not at home at that time. Later that afternoon, after Woods had returned home, a group of NDOP officers delivered Butler to Woods' trailer. The trailer had not been equipped with a wheelchair ramp or hospital bed, and Woods had not made any other preparations to receive Butler into her home. Despite the obvious lack of preparation and the officers' own doubts that Woods would be able to lift or move Butler on her own, they left Butler with Woods and returned to their regular employment duties. Woods called 911 two weeks later after she became concerned about Butler's pale appearance and his inability to eat or drink. Butler was taken by ambulance to a local hospital where doctors found him to be seriously malnourished, dehydrated, and suffering from an electrolyte imbalance. Butler remained in the hospital for several months and was eventually released to a nursing home.

In February 2000, Butler filed a complaint pursuant to 42 U.S.C. §§ 1983 and 1988 against Robert Bayer (then Director of the NDOP), Howard Skolnik (then Assistant Director of the NDOP), Sherman Hatcher (SDCC Warden), the NDOP and the State of Nevada in United States District Court for the District of Nevada.[2] In his complaint, Butler alleged that the individual defendants had deprived him of adequate protection from prisoner violence and adequate medical care, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Butler also asserted claims of common-law negligence and negligence by abandonment against all defendants.

In February 2002, following extensive discovery, the United States District Court entered summary judgment in favor of the federal action defendants. The court determined that, because Butler failed to inform any SDCC official that he feared for his safety, the defendants were entitled to qualified immunity from Butler's 42 U.S.C. § 1983 claims, since their conduct did not violate any clearly established constitutional right of which reasonable officers would have known. In the alternative, the court determined that the individual defendants did not act with the "deliberate indifference" necessary to establish an Eighth Amendment violation. Declining to exercise supplemental jurisdiction, the court dismissed

---

[2]We refer to these defendants collectively as the "federal action defendants."

Butler's remaining negligence claims without prejudice under 28 U.S.C. § 1367(c)(3). Butler appealed, and the United States Court of Appeals for the Ninth Circuit affirmed.[3]

Shortly thereafter, Butler filed a complaint in the Eighth Judicial District Court of the State of Nevada. He subsequently filed an amended complaint, naming Robert Bayer, Sherman Hatcher, Richard Smith, the State of Nevada and other unknown persons and corporations as defendants (collectively ''state action defendants''). The amended complaint alleged claims of negligence for failure to protect Butler from attack and negligence by abandonment, and Eighth Amendment violations under 42 U.S.C. § 1983. The state action defendants filed a joint motion for summary judgment which the district court granted. In short, the court concluded that res judicata and qualified immunity principles barred Butler's negligence and civil rights claims based on the federal court's previous factual findings, and that summary judgment was mandated on the claim of negligence by abandonment because the defendants were under no duty to provide medical care to Butler once he was released. Butler appeals.

## DISCUSSION

Butler first argues that the district court erred in entering summary judgment with respect to his federal civil rights claims against Smith.[4] He additionally argues that the district court erred in entering summary judgment on his state law negligence claims. We discuss each of these contentions in turn.

### Standard of review

This court reviews a summary judgment order de novo.[5] We have previously explained that ''[s]ummary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.''[6] A genuine issue of material fact

---

[3]*Butler v. Bayer*, 63 F. App'x 298 (9th Cir. 2003) (unpublished decision). The Ninth Circuit noted, however, that the district court did not use the correct summary judgment analysis established in *Saucier v. Katz*, 533 U.S. 194 (2001). *Butler*, 63 F. App'x at 299.

[4]Butler does not contest the entry of summary judgment with respect to his civil rights claims against any of the other individual defendants.

[5]*Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 713, 57 P.3d 82, 87 (2002).

[6]*Id.*; *see also Wood v. Safeway, Inc.*, 121 Nev. 724, 731, 121 P.3d 1026, 1031 (2005).

exists if, based on the evidence presented, a reasonable jury could return a verdict for the nonmoving party.[7]

*Civil rights claims against Smith*

To successfully assert a civil rights claim under 42 U.S.C. § 1983, Butler must show that Smith acted under color of state law to deprive him of a right, privilege, or immunity protected by the Constitution or laws of the United States.[8] Butler asserts that summary judgment was improper because Smith, a prison officer, deprived Butler of his Eighth Amendment rights by failing to protect Butler from attack by other inmates. Smith responds that summary judgment was appropriate because he is entitled to qualified immunity as a matter of federal law, Butler's civil rights claims are barred by claim and issue preclusion, and any of Butler's claims against him are barred by the applicable statute of limitations.

### Qualified immunity under federal law

In 42 U.S.C. § 1983 actions, qualified immunity protects state officials from civil liability for damages resulting from discretionary acts, so long as those acts do not violate clearly established statutory or constitutional rights.[9] Qualified immunity under federal law is not merely a defense to liability; it is " 'an entitlement not to stand trial or face the other burdens of litigation.' "[10] Accordingly, a defense of qualified immunity should be resolved at the earliest possible stage in litigation, as a finding of qualified immunity is an appropriate basis for granting summary judgment.[11]

In *Saucier v. Katz*, the United States Supreme Court developed a two-pronged inquiry for determining when summary judgment based on qualified immunity is appropriate.[12] As a threshold matter, a court must ask whether "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right?"[13] If no constitutional violation would exist even if the allegations are taken as true, the inquiry ends, and a finding of qualified immunity is appropri-

---

[7]*Pegasus*, 118 Nev. at 713, 57 P.3d at 87.

[8]*Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988).

[9]*Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).

[10]*Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

[11]*Id.* at 200-02.

[12]*Id.* at 201.

[13]*Id.*

ate.[14] However, if the parties' submissions indicate a possible constitutional violation, the reviewing court must assess whether the constitutional right was clearly established at the time of the alleged violation.[15] If the law does not put an officer on notice that his conduct is clearly unlawful, summary judgment based on qualified immunity is still appropriate.[16]

### Eighth Amendment protections

Because Butler's amended complaint failed to assert a violation of any constitutional right, even when viewed in the light most favorable to Butler, we conclude that the district court properly entered summary judgment in Smith's favor.

Under the Eighth Amendment, prison inmates have a right to be protected from attack or violence by other inmates.[17] Nevertheless, failure to protect an inmate constitutes an Eighth Amendment violation only when a prison official acts with "deliberate indifference" to the inmate's health or safety.[18] As established by the United States Supreme Court in *Farmer v. Brennan*, "deliberate indifference" requires a showing of " 'more than ordinary lack of due care for the prisoner's interests or safety.' "[19] Rather, the official must actually know of and disregard an excessive risk to inmate health or safety.[20] An officer's failure to mitigate a serious risk that he should have perceived, but did not, cannot constitute an Eighth Amendment violation.[21]

As found by the federal district court and adopted in the order of the court below, Butler did not inform any prison official that he had reason to believe he was in danger of retaliation by other inmates. Butler also concedes that Smith did not know why the prison was in lockdown when he reported to work on the morning of the beating and had no reason to believe Butler was in danger. Because Smith did not know Butler was in danger, we conclude that Smith did not act with "deliberate indifference" towards Butler's health or safety. Thus, Butler has failed to demonstrate that

[14]*Id.*

[15]*Id.*

[16]*Id.* at 202.

[17]*Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).

[18]*Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

[19]511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

[20]*Id.* at 837.

[21]*Id.* at 838.

Smith's actions constitute a violation of his rights under the Eighth Amendment. Accordingly, we further conclude that Smith was entitled to qualified immunity under the first prong of *Saucier*.[22] As Smith was entitled to qualified immunity, we discern no error in the district court's entry of summary judgment with respect to Butler's civil rights claims against Smith.[23]

### State law negligence claims

Butler next argues that the district court erred in granting summary judgment with respect to his state law negligence claims against all of the named defendants for failure to protect him from the attack, and for his negligence by abandonment claim. The respondents argue that the district court correctly granted summary judgment because they had no legal duty to protect Smith from attack and no duty to provide Smith with medical care upon his release from prison. The respondents also assert that they are entitled to discretionary-act immunity as a matter of state law under NRS 41.032(2). As noted, we agree that prison officials had no duty to shield Butler from an unforeseen intentional attack, but conclude that the respondents may have breached their duty of ordinary care in effectuating Butler's release. Additionally, as further noted, because any decisions made in coordinating Butler's release

---

[22]The federal district court did not apply the correct qualified immunity analysis established in *Saucier*, concluding that the officers were not "on notice" that their conduct was unlawful, without first asking whether the alleged conduct established a constitutional violation. *See supra* note 3. By citing the federal court order as the basis for its own grant of summary judgment, the Eighth Judicial District Court arguably adopted this flawed analysis as its own. However, "this court will affirm the order of the district court if it reached the correct result, albeit for different reasons." *Rosenstein v. Steele*, 103 Nev. 571, 575, 747 P.2d 230, 233 (1987). Here, because the facts as alleged by Butler do not establish any Eighth Amendment violation, a finding of qualified immunity was appropriate under *Saucier*.

[23]Because Smith is entitled to qualified immunity, we need not address Smith's remaining arguments regarding claim and issue preclusion and the statute of limitations. We note, however, that because Smith was likely in privity with the federal action defendants, the federal district court litigation centered around the same "transactional nucleus" of facts, and the federal action was terminated by a final judgment on the merits, Butler's suit against Smith is likely barred by the doctrine of claim preclusion. *See Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548, 555 (9th Cir. 2003). Similarly, relitigation of the federal court's finding that Butler did not inform prison officials that he had reason to fear for his safety is barred by the doctrine of issue preclusion. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006). However, because Butler's injuries rendered him "insane," NRS 11.250 tolled the applicable statute of limitations, indicating that Butler's claims against Smith were not time barred. *See Smith By and Through Smith v. City of Reno*, 580 F. Supp. 591, 592 (D. Nev. 1984) (interpreting "insane" as used in NRS 11.250 "to include a mental disability resulting in the inability to manage one's affairs").

were not based on considerations of public policy, we further conclude that the respondents are not entitled to discretionary-act immunity under NRS 41.032(2).[24]

### Negligence—failure to protect

We are reluctant to affirm summary judgment in negligence cases because, generally, the question of whether a defendant was negligent in a particular situation is a question of fact for the jury to resolve.[25] However, if a plaintiff cannot recover as a matter of law, the defendant is entitled to summary judgment.[26] To establish entitlement to judgment as a matter of law, a moving defendant must show that one of the elements of the plaintiff's prima facie case, such as duty, breach, causation, or damages, is " 'clearly lacking as a matter of law.' "[27] Because the existence of "duty" is a question of law, if this court determines that no duty exists, it will affirm summary judgment for the defendant in a case involving negligence.[28]

While defining the scope of a prison official's duty to shield an inmate from attack by other inmates is an issue of first impression in Nevada, several other jurisdictions have examined this issue. These jurisdictions generally follow the approach set forth in section 320 of the Restatement (Second) of Torts, which defines the duty to protect persons in custody as one of reasonable care to prevent intentional harm:

> One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the [state] actor
> (a) knows or has reason to know that he has the ability to control the conduct of the third persons, and

[24]*See Martinez v. Maruszczak*, 123 Nev. 433, 168 P.3d 720 (2007).

[25]*See Lee v. GNLV Corp.*, 117 Nev. 291, 296, 22 P.3d 209, 212 (2001); *Van Cleave v. Kietz-Mill Minit Mart*, 97 Nev. 414, 417, 633 P.2d 1220, 1222 (1981).

[26]*Van Cleave*, 97 Nev. at 417, 633 P.2d at 1222.

[27]*Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 968, 921 P.2d 928, 930 (1996) (quoting *Sims v. General Telephone & Electric*, 107 Nev. 516, 521, 815 P.2d 151, 154 (1991)).

[28]*See Lee*, 117 Nev. at 295-96, 22 P.3d at 212.

> (b) knows or should know of the necessity and opportunity for exercising such control.

Jurisdictions interpreting this section with respect to inmate safety reach several common conclusions. As a general proposition, prisons and prison officials must exercise reasonable and ordinary care to prevent violence between inmates.[29] Even so, the State is not a general insurer of inmate safety.[30] Rather, the State only has a duty to protect inmates from foreseeable harm.[31] Thus, in cases of intentional attack, prison officials have a specific duty to protect an inmate from attack only when the attack is foreseeable.

While courts differ in their interpretation of foreseeability under section 320, a majority of jurisdictions maintain that an attack is foreseeable only if prison officials actually knew that an inmate was in danger, or the assailant was dangerous, or otherwise had reason to anticipate the impending assault.[32] Citing *Cupples v. State*, the respondents assert that this majority approach is the proper standard.[33] In *Cupples*, an inmate of a Kansas correctional facility attacked another inmate, Terry Cupples, while a guard was away from the unit.[34] Although Cupples had reported prior threats by other inmates, she never reported any incidents involving the attacking inmate.[35] Because the attack was unexpected, and because Cupples did not advise prison authorities that she was in danger from the attacking inmate, the court concluded that the prison had no specific duty to protect Cupples from attack.[36] Absent any specific duty to protect Cupples, the court further concluded that the prison's actions, including the failure to place a guard in each unit at all times, did not breach its general duty to exercise reasonable and ordinary care to prevent violence between inmates.[37]

---

[29]*See Cupples v. State*, 861 P.2d 1360, 1372 (Kan. Ct. App. 1993); *Harrison v. Ohio Dept. of Rehab. & Corr.*, 695 N.E.2d 1248, 1252 (Ohio Ct. Cl. 1997).

[30]*See Sanchez v. State of New York*, 784 N.E.2d 675, 678 (N.Y. 2002); *Cupples*, 861 P.2d at 1369.

[31]*Sanchez*, 784 N.E.2d at 678; *Padgett v. State*, 558 N.Y.S.2d 433, 434 (App. Div. 1990).

[32]*See Cupples*, 861 P.2d at 1370; *Harrison*, 695 N.E.2d at 1253; *Cooney v. Hooks*, 535 N.W.2d 609, 611 (Minn. 1995).

[33]861 P.2d 1360.

[34]*Id.* at 1363-64.

[35]*Id.* at 1363, 1371.

[36]*Id.* at 1371-72.

[37]*Id.*; *see also Harrison*, 695 N.E.2d at 1253 (holding that the department of corrections was not liable for the sexual assault of one inmate by another when no prison official had knowledge of impending threat of harm to the vic-

We conclude that the majority approach articulated in *Cupples* is sound and therefore adopt it today. Accordingly, beyond the general duty to exercise ordinary care to prevent inmate violence, prison officials have a specific duty to protect inmates only when they actually know of or have reason to anticipate a specific impending attack. Accordingly, we reject a broad-based duty to intercede adopted by a minority of jurisdictions based upon "constructive notice" that unspecified potential violence is likely to occur.[38] Because of the inherent potential of inmate violence in penitentiary settings, this minority view essentially imposes strict liability upon prisons and prison officials whenever inmate violence results in injury to incarcerated persons. While this approach provides a bright-line rule that could be easily applied, it is contrary to foreseeability principles that apply to claims, such as Butler's, that are grounded in negligence.

In this case, Butler never informed any prison official that he had any reason to fear for his personal safety, and prison officials were not otherwise "on notice" of an impending attack. We therefore conclude that, under the standard set forth in *Cupples*, the respondents had no specific duty to protect Butler from an unforeseeable intentional attack. While the respondents still had a duty to exercise ordinary care to prevent inmate violence after the prison yard brawl, they reasonably fulfilled this duty by placing SDCC on lockdown status following the incident. Officer Smith's brief absence from the security "bubble," on its own, was not sufficient to demonstrate breach of this duty of ordinary care.[39] Because the respondents had no specific duty to protect Butler from this attack and they did not breach their ordinary duty to provide for inmate safety, we discern no error in the district court's summary judgment on Butler's negligence claims arising from the direct assault upon him.

tim); *Harris v. State*, 297 A.2d 561, 564-65 (N.J. 1972) (finding no liability where "[t]here had been no prior warning to any of the prison officials of the impending attack, nor had they been made aware of any circumstances calling for special precautions on their part").

[38] *See, e.g., Sanchez*, 784 N.E.2d at 679 (concluding that the state could have constructive notice of an impending intentional attack based on what the state "reasonably *should have known*—for example, from its knowledge of risks to a class of inmates based on the institution's expertise or prior experience, or from its own policies and practices designed to address such risks").

[39] *See Cupples*, 861 P.2d at 1371-72 (explaining that failure to place a guard in each prison unit at all times did not breach the prison official's general duty to exercise reasonable and ordinary care to prevent inmate violence); *see also Padgett*, 558 N.Y.S.2d at 434 ("[T]he mere fact that a guard was not present within the cellblock at the time of the incident was insufficient, absent a showing that prison officials had notice of an especially dangerous situation, to support a finding that the State failed to exercise reasonable care.").

### Negligence—abandonment

Butler also claims that the district court incorrectly granted summary judgment on his claims of negligence by abandonment for the injuries he incurred after his release to Sheila Woods' care. He concedes, however, that the State was not required to provide him with post-release medical care. Nonetheless, Butler maintains that the respondents ''simply abandoned'' him and that ''[t]he coldness of this action begs out for a remedy even without directly supporting case law.'' The respondents argue that summary judgment was appropriate, as the State generally has no duty to provide post-release medical care to an inmate who was injured while in the care and custody of the State.[40]

To recover in a negligence action, a plaintiff must demonstrate (1) that the defendant owed the plaintiff a duty of care, (2) that the defendant breached that duty, (3) that breach of the duty caused harm to the plaintiff that was reasonably foreseeable, and (4) damages.[41] Case law detailing the scope of care prison officials must exercise in releasing a special-needs inmate is nonexistent. As a general rule, however, state officials have a duty to exercise ordinary care in performing their duties.[42] Therefore, at a minimum, the respondents had a duty to exercise reasonable care to avoid foreseeable harm to Butler in effectuating his post-release placement.[43]

Because the question of whether reasonable care was exercised almost always involves factual inquiries, it is a matter that must generally be decided by a jury.[44] Here, the respondents arguably conceded at the oral argument of this appeal that, had they dropped Butler off at the bus station under standard prison policy, they would have breached their duty to exercise reasonable care.

Although the respondents' actions here did not constitute negligence as a matter of law, we conclude that the manner in which they deposited Butler at Woods' residence raises genuine issues of material fact as to whether they breached their duty to exercise reasonable care in effectuating Butler's release. Specifically, the fact

---

[40]*See Trout v. Buie*, 653 N.E.2d,1002, 1010 (Ind. Ct. App. 1995).

[41]*Sims v. General Telephone & Electric*, 107 Nev. 516, 521-25, 815 P.2d 151, 154-56 (1991).

[42]*State v. Silva*, 86 Nev. 911, 914, 478 P.2d 591, 592 (1970).

[43]*Id.*; *see also* NRS 41.031(1) (noting that subject to certain limitations, the State of Nevada ''consents to have its liability determined in accordance with the same rules of law as are applied to civil actions against natural persons and corporations'').

[44]*Sims*, 107 Nev. at 527, 815 P.2d at 158.

that prison officials left Butler at Woods' residence when it was obvious that Woods had not installed a wheelchair ramp or procured a hospital bed or any other medical supplies and appeared to be physically incapable of moving Butler on her own, could have lead a jury to conclude that the respondents' behavior was unreasonable under the circumstances.[45] We further conclude that a jury could reasonably find that at least some of Butler's injuries, specifically those caused in connection with his post-release decline, were a foreseeable result of the respondents' actions. Consequently, we reverse the judgment below in part and remand this matter for further proceedings regarding the abandonment claim.

### Discretionary-act immunity

The respondents assert that they are immune from liability under NRS 41.032(2) for any negligence in releasing Butler because that action involved the exercise of discretion. We disagree.

NRS 41.031 contains Nevada's general waiver of sovereign immunity from suits arising from acts of negligence committed by state employees. The purpose of that waiver is "to compensate victims of government negligence in circumstances like those in which victims of private negligence would be compensated."[46] Nonetheless, NRS 41.032(2) generally precludes maintenance of a suit based in state law against the State, its employees, or any agencies or subdivisions for actions that are "discretionary" in nature.[47]

Recently, in *Martinez v. Maruszczak*, we clarified our prior jurisprudence regarding NRS 41.032(2) and adopted the federal approach set forth in *Berkovitz v. United States*[48] and *United States*

---

[45]*Id.* (determining that the appellants may have breached duty to exercise reasonable care when a jury could conclude that the appellants' behavior was "unreasonable under the circumstances").

[46]*Harrigan v. City of Reno*, 86 Nev. 678, 680, 475 P.2d 94, 95 (1970) (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 65-69 (1955)).

[47]NRS 41.032 provides that:

[N]o action may be brought under NRS 41.031 . . . which is:

. . . .

2. Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

*See also Ortega v. Reyna*, 114 Nev. 55, 62, 953 P.2d 18, 23 (1998).

[48]486 U.S. 531 (1988).

*v. Gaubert*[49] for analyzing claims of discretionary-act immunity.[50] Under the *Berkovitz-Gaubert* approach, acts are entitled to discretionary-function immunity if they meet two criteria. First, the disputed act must be discretionary, in that it involves an element of judgment or choice.[51] Second, even if an element of judgment or choice is involved, the court must determine if "the judgment is of the kind that the discretionary function exception was designed to shield,"[52] *i.e.*, actions "based on considerations of social, economic, or political policy."[53] The focus of this second inquiry is not on the employee's " 'subjective intent in exercising the discretion conferred . . . but on the nature of the actions taken and on whether they are susceptible to policy analysis.' "[54]

Thus, as we explained in *Martinez*, certain acts, although discretionary, do not fall within the ambit of discretionary-act immunity "because they involve 'negligence unrelated to any plausible policy objectives.' "[55] Federal courts applying the *Berkovitz-Gaubert* test have reiterated that courts "must assess cases on their facts, keeping in mind [the purposes of] the exception: 'to prevent judicial "second guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' "[56]

Based on *Gaubert*, *Berkovitz*, and *Martinez*, we conclude respondents are not entitled to discretionary-act immunity for their actions in depositing Butler at Woods' residence. In this, we note that several decisions, including the decision to parole Butler and the formulation of any overarching prison policies for inmate release are policy decisions that require analysis of multiple social, economic, efficiency, and planning concerns. However, while the actions of prison officials in effectuating Butler's post-parole placement may have required the exercise of some judgment or choice,

---

[49] 499 U.S. 315 (1991).

[50] 123 Nev. 433, 443-47, 168 P.3d 720, 726-29 (2007). The discretionary-act immunity provision contained in NRS 41.032(2) is virtually identical to the discretionary-act immunity provision found in the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (2000). *Martinez*, 123 Nev. at 444 & n.29, 168 P.3d at 727 & n.29. Therefore, we determined federal jurisprudence to be useful in analyzing claims of immunity under NRS 41.032(2). *Id.*

[51] *Gaubert*, 499 U.S. at 322.

[52] *Id.* at 322-23 (quoting *Berkovitz*, 486 U.S. at 536).

[53] *Martinez*, 123 Nev. at 447, 168 P.3d at 729.

[54] *Id.* at 445, 168 P.3d at 728 (quoting *Gaubert*, 499 U.S. at 325).

[55] *Id.* at 446, 168 P.3d at 728 (quoting *Coulthurst v. U.S.*, 214 F.3d 106, 111 (2d Cir. 2000)).

[56] *Id.* at 446, 168 P.3d at 729 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)).

these actions were not based on the consideration of any social, economic, or political policy, as required by the second prong of the *Berkovitz-Gaubert* test. Accordingly, the respondents' actions in physically releasing Butler, including the decision to leave Butler at Woods' residence despite the obvious lack of preparation, are not protected by discretionary-act immunity.

## CONCLUSION

Because genuine issues of material fact exist as to whether the respondents acted negligently in effectuating Butler's release, we conclude that the district court erred in granting summary judgment with respect to Butler's claim of negligence by abandonment. Accordingly, we reverse that portion of the district court's summary judgment pertaining to Butler's negligence by abandonment claim and remand this matter to the district court for a jury determination of (1) whether the respondents were negligent in effectuating Butler's release and post-parole placement, (2) whether Butler's injuries were actually caused by the respondents' actions, (3) whether Butler's injuries were foreseeable, and (4) the extent of Butler's damages.[57] In this, we further conclude that the respondents are not entitled to discretionary-act immunity pursuant to NRS 41.032(2).

We affirm the district court's order to the extent it granted summary judgment as to Butler's remaining claims.

GIBBONS, HARDESTY, PARRAGUIRRE, DOUGLAS, CHERRY and SAITTA, JJ., concur.

---

[57]*See Lee v. GNLV Corp.*, 117 Nev. 291, 296, 22 P.3d 209, 212 (2001) (noting that foreseeability, duty, proximate cause, and reasonableness are generally questions of fact for a jury).