# IN THE SUPREME COURT OF THE STATE OF NEVADA

ROBERT LUCIANO, AN INDIVIDUAL,
Appellant,
vs.
SAINT MARY'S PREFERRED HEALTH
INSURANCE COMPANY, A NEVADA
CORPORATION, D/B/A HEALTH
CHOICE AND PREFERRED HEALTH
CARE NETWORK,
Respondent.

No. 67501

FILED

MAY 06 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court's order granting summary judgment in a medical malpractice and negligence action. Second Judicial District Court, Washoe County; Elliott A. Sattler, Judge.

We review de novo a district court's order granting summary judgment. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is proper if the pleadings and all other evidence on file demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Id.* On appeal, we must determine whether the district court erred in concluding that appellant was not "insane" under NRS 11.250, thereby tolling the statute of limitations for his negligence claim. We affirm.

On June 21, 2007, appellant Robert Luciano went to Saint Mary's Regional Medical Center (Saint Mary's) with symptoms of a stroke. Before his stroke, Luciano was a successful engineer and businessman, working as the Chief Technology Officer for Bally Gaming, Inc., trustee for

the Robert A. Luciano Jr. Trust (Luciano Trust), and managing partner for several limited liability corporations (LLCs). Luciano alleged in his complaint that Saint Mary's was inadequately staffed and resourced to handle strokes, exacerbating his condition, as there were long wait-times at the hospital. At the time of his hospital visit, Luciano was insured through respondent Saint Mary's Preferred Health Insurance Company (SMPHIC). Shortly after his hospital visit, on June 29, 2007, Luciano resigned from his position as trustee of the Luciano Trust and temporarily stopped working at Bally Gaming and operating his LLCs. On March 28, 2008, however, Luciano was reinstated as trustee of the Luciano Trust.

In 2011, Luciano defended against an Internal Revenue Service (IRS) determination that he was "passive with respect to companies for which he was an owner/manager in 2008 and 2009." In a package seeking reconsideration by the IRS, Luciano wrote a letter to the IRS, along with five affidavits from family members and colleagues discussing his stroke and his return to work, in an effort to demonstrate that he was actively participating in his LLCs. Luciano stated in his letter that after his stroke he "returned home in April of 2008 [and] ran [his] companies on a regular and continuous basis through 2009." Although Luciano did not submit an affidavit, relying on his unsworn letter, Luciano's father and coworkers corroborated Luciano's letter to the IRS in sworn affidavits. For example, Luciano's father stated that he "was legally given temporary Power of Attorney over [Luciano's] affairs until the time came that he regained his abilities, both mentally and physically, sufficient to again manage his own affairs under his own recognizance." Luciano's co-worker, Mark Felte, stated: "In January of 2008, upon sufficient recovery from his stroke, Robert Luciano Jr. was involved in the

decision processes required for day to day operations. During and after this time[,] we had regular communications via phone, email, and fax."

Despite these statements, on July 3, 2012, Luciano filed a complaint against Saint Mary's, the doctors at Saint Mary's, and SMPHIC, claiming: "As a result of the negligence and subsequent stroke, Robert Luciano suffered a mental disability and functional incapacitation which resulted in the inability to manage his affairs within the meaning of insanity under NRS 11.250." The district court dismissed Luciano's claims against the doctors and Saint Mary's because NRS 41A.097—a statute of limitations for providers of health care—does not include a tolling provision for insanity. The district court concluded that claims of negligence against SMPHIC, as an insurance company rather than a health care provider, fell under NRS 11.190(4)(e)'s two-year statute of limitations, which includes a tolling provision for periods of insanity. However, the district court determined that there was insufficient information at that time to demonstrate whether Luciano was insane.

Thereafter, SMPHIC moved for summary judgment, arguing that Luciano's claims were time-barred and Luciano should be estopped from claiming insanity based on representations he made to the IRS. In opposition, Luciano did not dispute his representations to the IRS. Rather, Luciano alleged that he did not understand the nature of what he was signing because "merely signing a document such as the letter [he] signed . . . and sent to the IRS, or even 'making a decision,' does not mean that [he] had or has the cognitive capability to understand what is going on." The district court granted summary judgment in favor of SMPHIC, stating "that no reasonable jury would find in favor of [Luciano] on the issue of tolling." The district court found that Luciano "protected his

rights on numerous occasions," by engaging counsel for other business affairs, purchasing millions of dollars of real property, managing the family trust, and contracting with corporations and real persons. The district court rejected Luciano's arguments that, while he did sign documents prepared by his family members and colleagues, he did not understand the nature of what he was signing. Luciano appeals.

A two-year limitations period applies to "an action to recover damages for injuries to a person . . . caused by the wrongful act or neglect of another." NRS 11.190(4)(e). If a person is insane "at the time the cause of action accrued," however, "the time of such disability shall not be a part of the time limited for the commencement of the action." NRS 11.250; *see Butler ex rel. Biller v. Bayer*, 123 Nev. 450, 460 n.23, 168 P.3d 1055, 1062 n.23 (2007). The term "insanity" "include[s] a mental disability resulting in the inability to manage one's affairs." *Bayer*, 123 Nev. at 460 n.23, 168 P.3d at 1062 n.23 (quoting *Smith ex rel. Smith v. City of Reno*, 580 F. Supp. 591, 592 (D. Nev. 1984)); *see also Tsai v. Rockefeller Univ.*, 137 F. Supp. 2d 276, 282 (S.D.N.Y. 2001) (defining "insanity" as being "of such a nature that plaintiff is unable to manage [his or her] business affairs and is incapable of comprehending and protecting [his or her] legal rights and liabilities"); *Alcott Rehab. Hosp. v. Superior Court*, 112 Cal. Rptr. 2d 807, 812 (Ct. App. 2001) (defining "insane" as one being "incapable of caring for his [or her] property or transacting business or understanding the nature or effects of his [or her] acts" (quoting *Pearl v. Pearl*, 177 P. 845, 846 (Cal. 1918))).

Here, Luciano was actively engaged in managing his affairs, notably complex, multimillion dollar business dealings. SMPHIC submitted ample evidence demonstrating that Luciano was engaged in his

businesses, land purchases, stock transactions, extensive travel, tax issues, and legal battles with counsel regarding claims against governmental agencies. Luciano concedes SMPHIC is correct that these transactions occurred, but argues he was technically insane throughout all of these transactions, and that his family members and colleagues made it appear he was actively engaged in his businesses when he really was only signing documents.

While Luciano's contradictory statements do not give rise to equitable estoppel as SMPHIC did not detrimentally rely on the statements made to the IRS,[1] contradictory statements may be used against a party on a summary judgment motion when no reasonable justification exists to explain the contradiction. *See Nutton v. Sunset Station, Inc.*, 131 Nev., Adv. Op. 34, 357 P.3d 966, 976 (Ct. App. 2015) ("The general rule is that a party cannot defeat summary judgment by contradicting itself in response to an already-pending NRCP 56 motion."); *Aldabe v. Adams*, 81 Nev. 280, 282, 402 P.2d 34, 35 (1965) ("[A] genuine issue of material fact may not be created by the conflicting sworn statements of the party against whom summary judgment was entered."), *overruled on other grounds by Siragusa v. Brown*, 114 Nev. 1384, 1393, 971 P.2d 801, 807 (1998); *see also Nghiem v. Allstate Ins. Co.*, 664 S.E.2d

---

[1]*See Cheqer, Inc. v. Painters & Decorators Joint Comm., Inc.*, 98 Nev. 609, 614, 655 P.2d 996, 998-99 (1982) (stating the fourth element of equitable estoppel requires that one "must have relied to his detriment on the conduct of the party to be estopped"); *Ford v. Brown*, 45 Nev. 202, 212, 200 P. 522, 525 (1921) ("An essential element of . . . [equitable] estoppel is that the party relying upon it was influenced by the acts or silence of the other to act as he would not otherwise have done, to his prejudice. There is no [equitable] estoppel . . . when such is not the case.").

925, 928 (Ga. Ct. App. 2008) ("[A] party's contradictory testimony is to be construed against him or her on motion for summary judgment unless a reasonable explanation for the contradiction is offered. . . . [W]hether this has been done is an issue of law for the trial judge." (internal quotation omitted)).

Allowing contradictory statements to be used against a party in summary judgment proceedings comports with the *genuine* requirement to survive summary judgment. In *Aldabe*, this court stated: "When [NRCP] 56 speaks of a 'genuine' issue of material fact, it does so with the adversary system in mind. The word 'genuine' has moral overtones. We do not take it to mean a fabricated issue." 81 Nev. at 285, 402 P.2d at 37. "A factual dispute is genuine when the evidence is such that a rational trier of fact could return a verdict for the nonmoving party." *Wood*, 121 Nev. at 731, 121 P.3d at 1031. A party cannot escape summary judgment by attempting "to build a case on the gossamer threads of whimsy, speculation, and conjecture." *Id.* at 732, 121 P.3d at 1031 (internal quotation omitted).

Here, Luciano contradicts the evidence he presented to the IRS that he was actively engaged in his businesses by offering evidence that he was, in fact, unable to manage his businesses after his stroke. While *Aldabe* discussed contradiction among *sworn* testimony, and, here, Luciano submitted an unsworn letter to the IRS, several family members and colleagues submitted signed affidavits, which the IRS undoubtedly relied upon when making its decision. A number of these affiants offered testimony in opposition to SMPHIC's motion for summary judgment contradicting their affidavits to the IRS. Although Luciano's justification for the contradiction concedes that many of the business transactions took

place in his presence or included his signature, he argues that he did not understand the nature of the transactions. The district court rejected Luciano's argument, finding that a reasonable jury would not believe that Luciano's friends and family members created an illusion that he was actively engaged in his business just to maintain his image.

We agree that Luciano's justification was not reasonable to create genuine issues of material fact to survive a motion for summary judgment in light of his and his family and colleagues' past statements, coupled with the report of one of his experts stating that Luciano's current condition, while worse than before, does not sufficiently impair his "instrumental activities of daily living," which is a requisite for finding insanity. *See Butler*, 123 Nev. at 460 n.23, 168 P.3d at 1062 n.23 (defining "insane" as "a mental disability resulting in the inability to manage one's affairs"). Thus, Luciano is time-barred from filing his claim against SMPHIC. Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Douglas

_____, J.
Saitta

_____, J.
Pickering

 

cc: Hon. Elliott A. Sattler, District Judge
Paul F. Hamilton, Settlement Judge
Brownstein Hyatt Farber Schreck, LLP/Reno
Laxalt & Nomura, Ltd./Reno
Second Judicial District Court Clerk