(861 P.2d 1360)

No. 68,385

TERRY CUPPLES, *Appellant,* v. STATE OF KANSAS; THE KANSAS DEPARTMENT OF CORRECTIONS; SECRETARY STEVEN J. DAVIES; DIRECTOR, GEORGE THOMPSON; and DELBERT TUTTLE, *Appellees.*

Opinion filed October 22, 1993.

*Steven M. Roth*, of Dickson & Pope, P.A., of Topeka, for appellant.

*Timothy G. Madden*, of Kansas Department of Corrections, of Topeka, for appellees.

Before BRISCOE, C.J., LARSON, J., and DAVID J. KING, District Judge, assigned.

LARSON, J.: Terry Cupples appeals the grant of summary judgment in favor of the State of Kansas; the Kansas Department of Corrections (DOC); former Secretary of Corrections, Steven J. Davies; former Director of the Kansas State Correctional Facility (KSCF), George Thompson; and Correctional Officer Delbert Tuttle in her suit alleging a claim under 42 U.S.C. § 1983 (1988)

and negligence for injuries she suffered because of the action of another inmate.

Cupples' incarceration for child abuse and escape began in November of 1987 at the Kansas Correctional Institute at Lansing (KCIL). She had no problems with other inmates and never requested protective custody at KCIL. She was transferred to KSCF in the early fall of 1988.

Shortly after moving to KSCF, Cupples was shown sexually explicit material and subjected to a sexually suggestive remark by a DOC employee, whose employment was terminated after Cupples complained to the warden. In late November, Cupples reported she had been threatened by inmates Shirley Thompson and Helen McVey, who were friendly with the discharged DOC employee.

The correctional counselor and officers were told of the Thompson and McVey threats and instructed to keep a close watch on them. Neither inmate ever attacked Cupples or made any further threats.

During her incarceration, Cupples was diagnosed with a left eye disorder requiring corneal transplant surgery which the State provided in December of 1988. After a short hospital confinement, Cupples was returned to the same housing facility at KSCF.

Cupples was instructed by her doctor to protect her eyes from physical trauma. She initially wore both an eye pad and later a metal shield over the eye. The metal shield was removed in March of 1989, after which Cupples played volleyball and softball.

About this time, Cupples told a counselor that inmate LaVita Scaife had touched her between her legs and propositioned her. Cupples said she had voluntarily kissed Scaife on the lips, written her love letters, and given her gifts. Cupples discussed with the counselor her attraction to women. Cupples stated she never felt any reason to fear harm from Scaife.

The incident giving rise to this suit occurred on May 18, 1989. Cupples was struck in the left eye by inmate Tara Young, resulting in loss of vision below the legal standard of blindness. Immediately prior to being struck, Cupples had voluntarily gone to McVey's room to listen to music and talk.

Cupples had encountered no problems with McVey after the previously reported threat, and their relationship was such that

Cupples felt comfortable enough to go to McVey's cell without an invitation.

Before the attack, Young had not propositioned Cupples or caused her any trouble. Cupples said she had not expected Young to hit her.

Just before the assault, Young came to McVey's room and told Cupples to "keep her name out of my [Cupples] mouth." Cupples said she had no idea what Young was talking about. Young then said something like, "I'll hit [you] upside your nubby, white head." After this comment, Young stepped away, turned her back, and started to leave. At this point, Cupples told Young to "Get on," and Young turned, grabbed Cupples, and punched her, with the blows resulting in Cupples' injury.

Tuttle was the correctional officer on duty at the time of the attack. Cupples had no prior complaints as to his actions, but at the time of the attack, he was not in the unit because he was holding a routine conference with a counselor. This was proper under prison policy, and no substitute or relief security was supplied. The inmates were aware when a correctional officer was absent from the unit.

In granting summary judgment, the trial court noted that Cupples conceded that as to her § 1983 claim, the State and the DOC were not "persons" within the meaning of 42 U.S.C. § 1983, following *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989). The individual defendants had claimed Cupples' suit was against them in their official capacities, which was barred by *Will*. Cupples had moved to amend her claim against Davies, Thompson, and Tuttle to sue them as individuals, and the trial court ruled that even if her motion was granted, Cupples had no viable § 1983 claim.

The trial court then ruled the police protection exception under the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 *et seq.*, precluded Cupples' suit against all defendants on the negligence cause of action and denied Cupples' motion for partial summary judgment. The police protection exception is found in K.S.A. 1992 Supp. 75-6104(n). There is no mention in the trial court's memorandum decision of the discretionary function exception set forth in K.S.A. 1992 Supp. 75-6104(e), which was also claimed

by the defendants, both at the trial level and on appeal, to bar Cupples' action.

We affirm the trial court, but not for the reasons given in its memorandum decision. Our decision is based on an appellate opinion that was filed subsequent to the trial court's decision herein and another that was issued after this case was argued.

Because this case comes to us after cross-motions for summary judgment, we first recognize the well-known rules by which such judgments are to be tested.

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' [Citation omitted.] To defeat a properly supported motion for summary judgment, the nonmovant must come forward with 'specific facts showing that there is a genuine issue for trial.' [Citation omitted.]" *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, 762, 829 P.2d 907 (1992).

*Were there material facts in issue which could support a finding of deliberate indifference on the part of the correctional officers and sustain a § 1983 claim?*

The defendants continue on appeal to raise a "standing" argument that summary judgment must be granted because Davies, Thompson, and Tuttle were sued only in their official capacities. The trial court was clearly considering claims against those defendants individually when it stated:

"In the case at bar the plaintiff's contentions of uncontroverted facts which are adequately supported by the record are not sufficient to support a claim against the defendants Davies, Thompson, and Tuttle *individually* for damages under Sec. 1983 as required by the holding of the Court in the Davidson case." (Emphasis added.)

It would have been an abuse of discretion for the trial court to have refused to allow Cupples to amend her petition to make her claim against the correctional officers individually, and it is apparent the claims were considered as against the three officers individually in the court's ruling.

As Cupples herself admits, it is not sufficient for her to allege only negligence, she must plead and show a factual basis for her claim that the correctional officers evidenced a "deliberate indifference" to her well-being.

It was held in *Estelle v. Gamble*, 429 U.S. 97, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976), that to support a § 1983 claim there must be a deliberate indifference on the part of the correctional officers. Mr. Justice Marshall so opined in writing:

"We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.' *Gregg v. Georgia, supra,* at 173 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." 429 U.S. at 104.

Judge Logan, in *Berry v. City of Muskogee*, 900 F.2d 1489, 1495 (10th Cir. 1990), considered deliberate indifference in a wrongful death action brought by the widow of an inmate who was killed by fellow inmates and stated:

"Deliberate indifference, however, is not self-defining. It does not require a finding of express intent to harm, but 'must involve more than ordinary lack of due care for the prisoner's interests or safety.' *Id.* at 319, 106 S. Ct. at 1084; *cf. Daniels v. Williams,* 474 U.S. 327, 330-31, 106 S. Ct. 662, 664, 88 L. Ed. 2d 662 (1986)(negligence not sufficient to establish substantive or procedural violation of Due Process Clause); *Davidson v. Cannon,* 474 U.S. 344, 348, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986).

"Courts have struggled to give a practical meaning to the 'deliberate indifference' standard. In *Duckworth v. Franzen,* 780 F.2d 645, 653 (7th Cir. 1985), *cert. denied,* 479 U.S. 816, 107 S. Ct. 71, 93 L. Ed. 2d 28 (1986), the court held that negligence, gross negligence and tort recklessness were all insufficient to justify liability under the Eighth Amendment. With all due respect to that court's analysis, we reject its conclusion that anything less than criminal recklessness by a jailer is per se insufficient to give rise to Eighth Amendment protections. As we see it, in its analysis, the *Duckworth* court collapsed the distinction so carefully preserved in *Whitley* between the malicious and sadistic standard applicable in prison riot situations and the deliberate indifference standard applicable to more ordinary prison policy decisions. *Whitley,* 475 U.S. at 320, 106 S. Ct. at 1084. 'Deliberate indifference,' while requiring a higher degree of fault than negligence, or even gross negligence, *City of Canton v. Harris,* 489 U.S. 378, 388 & n. 7, 109 S. Ct. 1197, 1204 & n.7, 103 L. Ed. 2d 412 (1989), remains lower than the intentional and malicious infliction of injury reflected in the *Whitley* standard. We, therefore, hold that an official or municipality acts with deliberate indifference if its conduct (or adopted policy) disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen,

*Prosser & Keeton on the Law of Torts* § 34, at 213 (5th ed. 1984)(describing reckless conduct as conduct 'in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences' (footnotes omitted); *see Germany v. Vance,* 868 F.2d 9, 18 & n.10 (1st Cir. 1989). We believe that this lower standard more exactly captures *Whitley's* distinction between malicious and sadistic deprivation of rights and deliberate indifference to the deprivation of rights."

Cupples makes a valiant effort to show there was deliberate indifference in the prison environment. She claims failures:

(1) to implement appropriate security against homosexually induced violence among inmates;

(2) to implement appropriate security through adequate communication between staff regarding potential security risks;

(3) to implement appropriate security during unit team meetings;

(4) to implement appropriate security during periods of medical convalescence and physical impairment;

(5) to provide appropriate security pertaining to protective custody; and

(6) to provide appropriate training to staff.

She asserts that these failures individually and collectively amount to a sufficient deliberate indifference to her rights and safety to justify a § 1983 claim.

The trial court found *Davidson v. Cannon,* 474 U.S. 344, 88 L. Ed. 2d 677, 106 S. Ct. 668 (1986), to be determinative. There, Davidson had been threatened by another inmate, McMillian, and sent a note about the threat to Cannon, the prison's assistant superintendent. Cannon read the note and passed it on to a correctional officer who took no action on it because of other "emergencies." No action was taken by day's end, and neither Cannon nor the officer informed the officers on duty for the next two days, which was the weekend.

Davidson did nothing else about the threat and did not request protective custody. He testified he did not foresee an attack and wrote the note to exonerate himself if the two inmates fought. On Sunday, McMillian physically injured Davidson.

After the trial court awarded damages, holding Davidson had been deprived of his liberty interest in personal security as the

result of Cannon's negligence, the United States Court of Appeals reversed, and the United States Supreme Court affirmed, holding the protections of the Due Process Clause of the Fourteenth Amendment are not triggered by lack of due care by prison officials. Justice Rehnquist found the principles enunciated in *Daniels v. Williams*, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986), controlling and said: "In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." 474 U.S. at 347.

Cupples tries to distinguish *Davidson* by claiming the plaintiff there alleged mere negligence, while here, she has alleged deliberate indifference. Such is not sufficient, as she has failed to come forward with any specific facts that show reasonable persons could differ from the conclusions drawn by the trial court based on the facts presented.

Cupples attempts, for the first time on appeal, to argue that "homosexual induced violence among inmates" is a pervasive problem being ignored by the DOC. The facts of the case are to the contrary, and while homosexual activity in a prison environment undoubtedly exists, there was no evidence the correctional officials ignored a known problem which was likely to result in injury to Cupples. In short, there is a total absence of any facts that show the individual defendants acted with deliberate indifference with regard to their obligation to Cupples.

Cupples contends she is a member of an identifiable group that required specific attention regarding personal safety. See *Withers v. Levine*, 615 F.2d 158, 162 (4th Cir. 1980) (inmate part of identifiable group subject to sexual assault by other inmates). The problem with the *Withers* argument, however, is that it relies on the no longer legally accepted premise that "negligence by a state official under some circumstances may itself violate a constitutionally protected right." 615 F.2d at 162. In light of the more recent holding in *Daniels v. Williams* that negligence, by itself, in no circumstances gives rise to a constitutional violation, *Withers* does not support Cupples' claim.

The "facts" stated by Cupples in her brief regarding alleged lesbian activity are not supported in the record on appeal. Cupples had the burden to provide a sufficient record to support her

claims on appeal. See *Dickinson, Inc. v. Balcor Income Properties Ltd.*, 12 Kan. App. 2d 395, 399, 745 P.2d 1120 (1987), *rev. denied* 242 Kan. 902 (1988). She has not come forward with any specific facts to support these contentions.

We affirm the trial court's grant of summary judgment in favor of all of the defendants on Cupples' § 1983 claim.

*Was summary judgment properly granted under the police protection exception or the discretionary function exception to the Kansas Tort Claims Act?*

The trial court, in an opinion rendered before *C.J.W. v. State*, 253 Kan. 1, 853 P.2d 4 (1993), and *Washington v. State*, 17 Kan. App. 2d 518, 839 P.2d 555 (1992), were decided, granted the defendant's summary judgment motion by ruling the police protection exception to liability under the KTCA immunized defendants from Cupples' claim.

Under the KTCA, "liability [is] the rule and immunity the exception." *Carpenter v. Johnson*, 231 Kan. 783, 784, 649 P.2d 400 (1982). The burden is on the defendants to establish that the acts complained of fall within one of the exceptions listed in K.S.A. 1992 Supp. 75-6104. *Jackson v. City of Kansas City*, 235 Kan. 278, 286, 680 P.2d 877 (1984).

There are two provisions of the KTCA under which exceptions to liability were claimed by the defendants. The first is the police protection exception:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

(n) failure to provide, or the method of providing, police or fire protection." K.S.A. 1992 Supp. 75-6104.

The second exception, referred to as the discretionary function exception, immunizes governmental entities or employees from liability for.

"any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." K.S.A. 1992 Supp. 75-6104(e).

The trial judge did not consider whether the discretionary function exception applied, but ruled the defendants were not liable because the individual defendants were law enforcement officers

whose conduct fell within the police protection exception. No authority was mentioned to support this bald conclusion, although the defendants had cited *Beck v. Kansas Adult Authority*, 241 Kan. 13, 735 P.2d 222 (1987), and *Cansler v. State*, 234 Kan. 554, 675 P.2d 57 (1984), in support of their summary judgment motion.

The appeals in both *C.J.W.*, 253 Kan. 1, and *Washington*, 17 Kan. App. 2d 518, resulted in reversals of the trial court's grants of summary judgment in favor of the State of Kansas based on exceptions to the KTCA. However, when we apply the legal reasoning of those cases to the facts of this case, summary judgment for the State, the DOC, and the individual defendants must clearly be affirmed.

Although *Washington* involved an injury to the eye of an inmate, the rest of the factual background there is materially different from our case. Washington, while incarcerated at the Lansing Correctional Facility, attempted to intervene when Timothy Vaughn tried to forcefully sodomize another inmate. Vaughn then turned on Washington.

Both Washington and Vaughn were placed in the Adjustment and Treatment Unit (A&T), where Vaughn threatened Washington in the presence of correctional officers, saying "I'm going to get you." 17 Kan. App. 2d at 519. Washington voiced his concern about the threats to an A&T officer.

For different reasons, Washington and Vaughn were released into the general prison population on the same day and placed four cells apart. Washington did not request protective custody because he did not anticipate being placed in the same cellhouse as Vaughn. Space was available to put the two men in separate sections of the prison. On the same day as their release, Vaughn stabbed Washington in the left eye with an icepick.

The trial court in *Washington* granted summary judgment to the State under the discretionary function exception, although the police protection exception was raised in its summary judgment motion and on appeal. The State cross-appealed, claiming K.S.A. 1991 Supp. 75-5210(a), which requires the State to treat inmates humanely, was improperly expanded by applying Restatement (Second) of Torts § 320 (1977) to create a special relationship between the State and Washington and a duty flowing

from that relationship to exercise reasonable care to control Vaughn's conduct to prevent him from harming Washington.

In *Washington*, we first focused on the duty of care owed by one to control the conduct of third persons where a special relationship exists and stated:

"As a general rule, in the absence of a 'special relationship' there is no duty on an actor to control the conduct of a third person to prevent harm to others. *McGee v. Chalfant*, 248 Kan. 434, 438, 806 P.2d 980 (1991); Restatement (Second) of Torts § 315 (1977). A special relationship may exist between parent and child, master and servant, the possessor of land and licensees, persons in charge of one with dangerous propensities, and persons with custody of another. Restatement (Second) of Torts §  316-320." 17 Kan. App. 2d at 521.

The court further found that

"prison officials owe a duty of ordinary or reasonable care to safeguard a prisoner in their custody or control from attack by other prisoners. This duty to provide reasonable care to protect an inmate from violence is not violated in the absence of a determination that the danger was known or, in the exercise of ordinary care, should have been known by a prison official. [Citations omitted.]" 17 Kan. App. 2d at 523.

The *Washington* court held that whether the duty owed by the State to Washington had been breached was a question of fact which should be submitted to a trier of fact, citing *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86 (1983). This ruling resulted in the reversal of the trial court's grant of summary judgment. 17 Kan. App. 2d at 524.

As to the discretionary function exception and the police protection exception, *Washington* held that if, on remand, the factfinder finds the State's legal duty under the Restatement (Second) of Torts § 320 was breached; neither exception would provide the State with immunity from liability.

The crucial holding of *Washington* as to the duty of the State to a prisoner is a determination of whether the danger was known or, in the exercise of ordinary care, should have been known by a prison official.

*Washington* clearly states the State's duty to protect inmates from foreseeable harm does not make it the insurer of the safety of a prisoner from unforeseeable harm. 17 Kan. App. 2d at 524. See *Parker v. State*, 282 So. 2d 483, 486 (La. 1973), *cert. denied* 414 U.S. 1093 (1974).

Although *Washington* provides a framework to decide this case, we must also analyze *C.J.W. v. State,* 253 Kan. 1, filed after we heard oral arguments in this case.

The plaintiff, C.J.W., was allegedly sexually assaulted by a minor known as Randy while both were being detained at the Johnson County Juvenile Hall.

Randy had been in the custody of the Kansas Department of Social and Rehabilitation Services (SRS) since 1976 with a constant history of aggressive, disruptive, violent behavior and the tendency to bully, hit, and beat smaller boys. C.J.W. alleged SRS knew of Randy's sexually deviant tendencies, including attempting to molest a three-year-old girl and acting out sexually on occasions. It was claimed he was considered a rapist by one facility.

The SRS caseworker in charge of Randy's case talked with juvenile hall officials, but did not provide information about Randy's history or instructions regarding specific measures that should be taken to supervise Randy or protect other detainees from him.

Summary judgment had been granted by the trial court, which had not found that the KTCA " 'does not create a legal duty on the part of the State and does present a discretionary function and that the State was within its proper discretion in all of its actions.' " 253 Kan. at 6-7. The Court of Appeals affirmed, relying primarily on the erroneous belief that the facts established the assaults had occurred before SRS knew of Randy's detention in juvenile hall.

The Kansas Supreme Court reversed and remanded for many of the same reasons stated in the *Washington* decision. The provisions of Restatement (Second) of Torts §§ 315, 319 and 320 (1977), were deemed applicable, and the discretionary function exception of the KTCA was held not to be applicable. The court stated the following general principles:

"One who is required by law to take custody of another under circumstances which deprive that person of the normal opportunities for protection is under a duty to protect the person taken into custody against unreasonable risk of physical harm from others."

"One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

"One who is required by law to take or who voluntarily takes custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him is under a duty to exercise reasonable care so to control the conduct of third persons to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor (a) knows or has reason to know that he has the ability to control the conduct of the third persons and (b) knows or should know of the necessity and opportunity for exercising such control."

"The discretionary function exception to the Kansas Tort Claims Act, K.S.A. 1992 Supp. 75-6104(e), is not applicable in those situations where a legal duty exists, either by case law or by statute, which the governmental agency is required to follow. The governmental agency cannot properly claim that its challenged action falls within the discretionary function exception where the action taken violated a legal duty." 253 Kan. 1, Syl. ¶¶ 3, 4, 5, 7.

*Washington* and *C.J.W.* both cite *Cansler*, the case where the rule of Restatement (Second) of Torts § 319, was adopted in Kansas. *Cansler* held the State had the duty to securely confine its dangerous inmates, as well as a duty to warn area residents and law enforcement officials, after seven armed inmates escaped. We believe the *Cansler* decision and its holding should be limited to its particular facts, and it is not deemed particularly instructive to our situation.

The State is "under a duty to exercise reasonable care so to control the conduct of third persons to prevent them from intentionally harming the other . . . if the actor (a) knows or has reason to know that he has the ability to control the conduct of the third persons and (b) knows or should know of the necessity and opportunity for exercising such control." *C.J.W.*, 253 Kan. 1, Syl. ¶ 5.

The critical issue we must decide is whether the State had a duty to exercise reasonable care to control Young and prevent Young's attack on Cupples. Whether such a duty exists is a question of law. *C.J.W.*, 253 Kan. 1, Syl. ¶ 1.

We have little history in Kansas as to the duty owed to prisoners because, prior to the enactment of the KTCA, our rule of nonliability of a governmental unit while acting in the performance of its governmental function was unswerving. See *Parker v. City of Hutchinson*, 196 Kan. 148, 410 P.2d 347 (1966) (not error to dismiss action against municipality for recovery for personal

injuries to prisoner resulting from assault by another prisoner). Two early Kansas cases, *Berberick v. Topeka*, 119 Kan. 552, 240 Pac. 968 (1925), and *Blakeman v. City of Wichita*, 93 Kan. 444, 144 Pac. 816 (1914), involved injuries inflicted upon prisoners by groups of fellow prisoners, and the issue was whether this fell within the purview of a state statute making cities liable for damages accruing from the actions of mobs.

The general problem of liability of prison authorities for injury to prisoners is well discussed in Annot., 41 A.L.R.3d 1021, 1025, which states:

"The prison environment has been a fertile ground for assaults, as it normally consists of confinement in close quarters and under unpleasant conditions of large numbers of persons, many of whom are predisposed to, violence and frequently, to grudges, racial hatred, and homosexual jealousy. . . ."

"[C]ases . . . recognize or imply, and none deny, that in the absence of a statute to the contrary, the duty of care owed by prison officials and governmental units to prisoners in their charge is the duty of reasonable care. Similarly, many of the cases recognize expressly or impliedly, and none deny, that *there is no liability on the part of a prison official or governmental unit in the absence of knowledge of the danger of an assault, or at least of reason to anticipate such danger.*" (Emphasis added.)

There are numerous cases which uphold the principle that prison authorities are not liable for injuries inflicted by one prisoner on another in the absence of knowledge of danger or reason to anticipate it. The absence of knowledge of the assailant prisoner's violent propensities or of reason to anticipate a violent outburst on his part was the critical factor in reversing a judgment for a prisoner assaulted by a fellow prisoner in *City of Lexington v. Greenhow*, 451 S.W.2d 424 (Ky. 1970).

That a fellow prisoner with whom the plaintiff prisoner had been quarreling would remove a cylinder of acid from a fire extinguisher and pour the contents over the face and head of the sleeping prisoner was held not reasonably foreseeable, and judgment favorable to the State in a negligence suit resulting from injuries thereby sustained was accordingly affirmed. *Flaherty v. State of New York*, 296 N.Y. 342, 73 N.E.2d 543 (1947). This decision points to the need to consider the foreseeability of the action and the injury when we determine the extent of the duty

of exercising reasonable care as required in Restatement (Second) of Torts § 320.

In *Barnard v. State*, 265 N.W.2d 620 (Iowa 1978), prison officials were held not liable for a razor blade assault on the plaintiff absent knowledge of incidents of hostility or tension between the two prisoners involved or of any prior trouble with the assailant. See generally Annot., 41 A.L.R.3d 1021, 1993 Supp. at 68-63, (cases generally finding no liability without knowledge that attack was foreseeable).

We point out the crucial difference in the otherwise similar facts of *Washington* and the within case. In *Washington*, there were several specific threats by Vaughn to Washington made in the presence of and known to the correctional officers. Here, we have no known prior threat and so no factual basis for a finding that the defendants owed Cupples a specific duty to prevent the attack by Young.

It is important to remember that Cupples admitted that she did not expect Young to hit her. Cupples had no problems with McVey after the previously reported threat, and their relationship was such that Cupples felt comfortable enough to go to McVey's cell without an invitation. There was no report to any guard, correctional officer, or counselor about any threat from Young, nor was there any evidence from which the State should have anticipated Young's attack on Cupples. There is no evidence the defendants knew or should have known that Young had focused on Cupples and intended to harm her.

Cupples claimed six separate acts of negligence to justify finding liability. They were:

1. "Failing to implement appropriate security at [KCSF] against homosexually induced violence among inmates."
2. "Failing to implement appropriate security at [KCSF] through inadequate communications between staff regarding known potential security risks."
3. "Failure to provide adequate security during unit team meetings at [KCSF]."
4. "Failing to provide appropriate security at [KCSF] during medical convalescence and impairment."
5. "Failure to provide appropriate security at [KCSF] pertaining to protective custody."

6. "Failure to provide appropriate training at [KCSF] to staff pertaining to, but not limited to, homosexual activity and its relationship to inmate security."

Cupples' claims essentially fall into these categories: failure to implement or provide adequate or appropriate security and failure to provide appropriate training. There are no specific facts to raise a credible conclusion that a specific duty to her was breached or that any causal connection exists between the acts she claims were negligent and her injury.

The allegations and claims of lesbian activity are made after the fact and provide no basis to substantiate a specific duty which was owed to Cupples.

Allegations regarding failure to provide adequate security are spurious, as it appears the only security measure that could have prevented this attack would have been to station a guard in each room at all times. The claims of lack of adequate security have no factual basis. Cupples never requested protective custody, and the claim that defendants failed to provide it is ludicrous.

Whether to provide replacement security during team meetings is clearly a discretionary matter which would fall under that exception to the KTCA. It has not been shown to have any effect on the facts of this case.

In the final analysis, our decision may also be based on the fact the injury to Cupples was not foreseeable by the defendants. Foreseeability, for the purpose of proving negligence, is defined as a common-sense perception of the risks involved in certain situations and includes whatever is likely enough to happen that a reasonably prudent person would take it into account. *Upson v. Goodland State Bank & Trust Co.*, 797 P.2d 845, 848 (Colo. App. 1990). An injury is foreseeable so as to give rise to a duty of care where a defendant knows or reasonably should know that an action or the failure to act will likely result in harm. *Huston v. Konieczny*, 52 Ohio St. 3d 214, 217, 556 N.E.2d 505 (1990).

Foreseeability is extensively discussed in the recent opinion of *Nero v. Kansas State University*, 253 Kan. 567, 861 P.2d 768 (1993). *Nero* is clearly factually different from our case, as it holds that a state university owes student tenants the same duty to exercise due care for their protection as a private landowner owes to its tenants. In discussing foreseeability, *Nero* holds that

" '[w]hether risk of harm is reasonably foreseeable is a question to be determined by the trier of fact. Only when reasonable persons could arrive at but one conclusion may the court determine the question as a matter of law.' " 253 Kan. at 583. There is no factual basis in our case for finding it foreseeable that Young would attack Cupples. This is the only conclusion which reasonable persons would reach.

Thus, whether we test the trial court's ruling by the test required by *Washington* or that of *C.J.W.*, we reach the identical conclusion that requires the trial court's ruling on the summary judgment motions to be affirmed.

There is no factual basis for finding the State owed Cupples the duty to protect her from Young, and, where no specific duty is owed, the State is required only to exercise reasonable and ordinary care to prevent attacks by other inmates. *Washington*, 17 Kan. App. 2d at 523. No breach of duty occurred because there was no way the defendants knew or should have known the danger existed.

We hold, as a matter of law, that Cupples has failed to show that a special duty existed on the part of the defendants to protect her from an unanticipated and unexpected attack by Young. We also hold it was not foreseeable under the circumstances that Young would attack Cupples.

Affirmed.