NOT DESIGNATED FOR PUBLICATION

No. 115,091

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RICKEY MARKS,
*Appellant*,

v.

RAY ROBERTS,
SECRETARY OF CORRECTIONS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed December 2, 2016. Affirmed.

*Michael G. Highland*, of Bonner Springs, for appellant.

*Sherri Price*, legal counsel, of Lansing Correctional Facility, and *Roger W. Slead* and *Richard M. Acosta*, of Horn, Alyward & Bandy, LLC, of Kansas City, Missouri, for appellee.


Before GARDNER, P.J., ATCHESON, J., and STUTZMAN, S.J.


*Per Curiam*: In this appeal from the district court's denial of his K.S.A. 2015 60-1501 petition, Rickey Marks argues that the Kansas Department of Corrections was deliberately indifferent to his serious medical needs, thus violating his United States Constitution Eighth Amendment right to be free from cruel and unusual punishment. Finding no deliberate indifference, we affirm.

1

*Factual and procedural background*

The facts in this case are undisputed. Rickey Marks has been in prison since October 1, 2009. According to his prison medical file, in September 2012, Marks weighed 258 pounds and was medically classified as morbidly obese. He had undergone heart and carpal-tunnel surgeries and had several ongoing medical conditions, including hypertension, recurrent groin pain, low back pain, athlete's foot, and chronic heel pain. Marks reported to the doctor at this September 2012 appointment that he had been treated unsuccessfully for plantar fasciitis and that his heel pain had begun about 6 years earlier.

At that September 2012 doctor's appointment, which is the first appointment included in the medical file provided to the district court, Marks was prescribed and received heel compression cups to treat his heel pain.

In January 2013, Marks reported that the heel cups were not helping his pain. He received prescriptions for two medications and was referred to Dr. Larry Bumguardner, a doctor affiliated with the company that provides inmate medical care. In February 2013, Dr. Bumguardner reported that Marks was still in pain, and he prescribed new heel cups and a different medication. Marks received the new heel cups a few days later.

In October 2013, Marks saw a podiatrist outside of the prison system, Dr. Donald Gentry. Dr. Gentry diagnosed Marks with plantar fasciitis and pronation syndrome and performed steroid injections in both of Marks' heels. Marks later reported that he had received temporary pain relief from the injections. Dr. Gentry also recommended, but did not specifically prescribe, special orthotic shoes, night splints, and physical therapy, and he discussed but did not recommend surgery.

In January 2014, Marks saw Dr. Gentry for a follow-up appointment. This time, Dr. Gentry prescribed night splints and physical therapy. In early March 2014, the

2

physical therapist noted that Marks had not received any pain relief from his physical-therapy exercises or from electrical-stimulation therapy. In March and April 2014, several documents in Marks' medical file show that prison healthcare staff was considering what to do about Marks' heel pain.

On May 20, Marks filed a grievance about his medical care, alleging that he had not received the prescribed night splints or recommended orthotic shoes.

On June 3, Marks saw Dr. Gentry again. At this visit, Marks again received steroid injections in both heels, and Dr. Gentry prescribed a medication and special orthotic shoes from Hanger Clinic. Prison healthcare providers submitted a formal request for the shoes and made an appointment at Hanger for Marks to be fitted for the shoes.

On July 21, Marks' grievance was finally denied at the last level of administrative review, and on July 30, he filed his K.S.A. 2015 Supp. 60-1501 petition.

On August 6, Marks received night splints, custom arch supports, and extra depth shoes from Hanger Clinic. On October 7, Marks saw Dr. Gentry again and received another round of steroid injections in his heels.

On October 15, Marks saw Dr. Paul Corbier, a doctor affiliated with the company contracted to provide inmate care, who reported that Marks was not using his night splints regularly but that the arch support and shoes did help with walking. Dr. Corbier also noted that he thought Marks was not doing his heel exercises regularly. Dr. Corbier told Marks that he needed to use the night splits, do his exercises, and keep wearing the shoes; he also prescribed a new medication to help with the heel pain.

On December 30, Marks saw Dr. Gentry again, and he prescribed a neuropathy cream to treat nerve pain in Marks' feet as well as a different kind of orthotic shoe.

3

Around March 2015, Marks filed a second grievance about his medical care, alleging he had not yet received the prescribed orthotic shoes and neuropathy cream. Marks received the cream on March 13. The grievance was unilaterally deemed resolved on March 30. Marks was fitted for the shoes at Hanger Clinic on April 16. Marks filed a third grievance about his medical care, regarding a follow-up podiatrist appointment which was denied on April 23. He received the shoes on June 2.

In June and July 2015, Marks had 6 weeks of physical-therapy appointments, where his treatments included heel exercises, electrical stimulation, rolling his feet on ice, manual therapy, and tennis-ball massage. The physical-therapy records indicate that the treatment did not relieve Marks' pain.

Marks saw an in-prison healthcare provider, Dr. Karl Saffo, on July 21, August 10, and September 15, 2015. At these appointments, Dr. Saffo adjusted Marks' medication in response to his pain complaints. On October 1, Dr. Saffo gave Marks diabetic socks and two different creams for his feet. Marks saw Dr. Saffo on October 5 and 12, and Dr. Saffo gave Marks a pumice stone for his feet at the second appointment.

On October 22, the district court held an evidentiary hearing on Marks' K.S.A. 2015 Supp. 60-1501 petition. Marks described his pain and the medical treatment he had received. The district court accepted an affidavit in place of live testimony from Dr. Corbier. Dr. Corbier had treated Marks and reviewed Marks' medical file. He concluded that Marks had received appropriate medical care at all times. Marks' medical file was attached to Dr. Corbier's affidavit. The district court then denied Marks' K.S.A. 2015 Supp. 60-1501 petition, finding that Dr. Corbier's affidavit and Marks' medical file directly contradicted Marks' claim that his medical needs had been ignored and neglected. Marks appeals that decision.

*Substantial Evidence Supports the District Court's Conclusion That the Kansas Department of Corrections Was Not Deliberately Indifferent to Marks' Medical Condition.*

Marks argues that the Kansas Department of Corrections was deliberately indifferent to his serious medical needs by delaying his medical treatment, which violated his Eighth Amendment right to be free from cruel and unusual punishment.

When the district court denies a prisoner's K.S.A. 2015 Supp. 60-1501 petition after holding an evidentiary hearing, we ask on review whether the district court's factual findings are supported by substantial evidence and are sufficient to support the court's conclusions of law. *Rice v. State*, 278 Kan. 309, 320, 95 P.3d 994 (2004); *Hooks v. State*, 51 Kan. App. 2d 527, 530, 349 P.3d 476 (2015). Evidence is substantial when a reasonable person would accept it as sufficient to support a conclusion. *Rice*, 278 Kan. at 320.

The Eighth Amendment to the United States Constitution and Section 9 of the Kansas Constitution Bill of Rights both prohibit cruel and unusual punishment. These constitutional guarantees include the right of prison inmates to receive adequate medical care and treatment. *Levier v. State*, 209 Kan. 442, 445, 448, 497 P.2d 265 (1972). An inmate who has not received adequate medical care can raise that complaint in a K.S.A. 2015 Supp. 60-1501 petition. 209 Kan. at 449; *Darnell v. Simmons*, 30 Kan. App. 2d 778, 780, 48 P.3d 1278 (2002).

An inmate's Eighth Amendment right to be free from cruel and unusual punishment is violated when prison officials show deliberate indifference to an inmate's serious medical need, causing an unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Roe v. Elyea*, 631 F.3d 843, 856-57 (7th Cir. 2011). To establish an Eighth Amendment violation in these circumstances, the inmate must show two things.

5

First, the inmate must show that his or her medical need is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Darnell*, 30 Kan. App. 2d at 781. This is an objective standard meaning that a doctor has diagnosed and prescribed treatment for the medical need or that the need is obvious enough for a lay person to recognize that medical attention is required. *Farmer*, 511 U.S. at 834; *Darnell*, 30 Kan. App. 2d at 781. Marks has shown that his heel pain was a serious medical condition. His medical record, summarized above, shows doctors have diagnosed and repeatedly prescribed medicine and treatment for his heel pain, thus meeting the objective test. See *Farmer*, 511 U.S. at 837.

Second, the inmate must show that a prison official was deliberately indifferent to that serious medical need, meaning the official knew about and disregarded an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 837; *Darnell*, 30 Kan. App. 2d at 781. This standard requires something more than ordinary negligence or a simple lack of due care, but something less than an intention to cause harm. *Farmer*, 511 U.S. at 835-36; *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Darnell*, 30 Kan. App. 2d at 781 (citing *Cupples v. State*, 18 Kan. App. 2d 864, 869, 861 P.2d 1360 [1993]); see *Estelle*, 429 U.S. at 105-06. Deliberate indifference occurs when a prison doctor ignores an inmate's medical needs or when a prison official prevents an inmate from seeking medical personnel or from receiving recommended treatment. *Estelle*, 429 U.S. at 104; *Ramos*, 639 F.2d at 575; *Darnell*, 30 Kan. App. 2d at 781.

The district court found that Marks had received a considerable amount of medical attention and treatment. Substantial evidence supports that conclusion. As Marks' medical record indicates, he received medication, two different types of heel cups, steroid injections, physical therapy, orthotic shoes and night splints, neuropathy and other creams, some medications, diabetic socks, and a pumice stone. Marks' medical needs were not ignored or neglected. No one at the prison disregarded an excessive risk to Marks' health. See *Farmer*, 511 U.S. at 837.

Admittedly, there were some delays in some of Marks' treatment. From the dates they were specifically prescribed, Marks had to wait about 7 months for night splints and about 2 months for his first pair of orthotic shoes. Then Marks had to wait about 2 months for neuropathy cream and 5 months for his second pair of orthotic shoes. But he eventually received everything his doctors prescribed. At most, the delays in Marks' treatment establish that prison officials may have been negligent in following through with certain prescribed treatments, not that they knew about and disregarded an excessive risk of harm to Marks' health or safety. See *Farmer*, 511 U.S. at 837.

Finally, to the extent that Marks simply disagrees with the course of treatment he received for his heel pain, his disagreement does not amount to a violation of his right to adequate health care. See *Stolte v. Cummings*, 31 Kan. App. 2d 639, 642, 70 P.3d 695 (2003); *Darnell*, 30 Kan. App. 2d at 782; see also *Estelle*, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.").

Because the district court's factual conclusions are supported by substantial evidence and those factual conclusions are sufficient to support the district court's legal conclusions, we affirm the district court's judgment.

Affirmed.