NOT DESIGNATED FOR PUBLICATION

No. 128,533

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BILLIE ELLIOTT,
*Appellant*,

v.

JEFF ZMUDA, Secretary of the Kansas Department of Corrections, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Butler District Court; JOHN E. SANDERS, judge. Submitted without oral argument. Opinion filed August 22, 2025. Affirmed.

*Chris J. Pate*, of Pate & Paugh, LLC, of Wichita, for appellant.

*Christine M. Tortorice*, legal counsel, Kansas Department of Corrections, for appellees.

Before COBLE, P.J., ISHERWOOD and HURST, JJ.

PER CURIAM: Billie Elliott, an inmate at the El Dorado Correctional Facility (EDCF), appeals from the district court's order dismissing his K.S.A. 60-1501 petition claiming the warden wrongly failed to place him in a single-man cell. He alleges the actions of EDCF failed to protect him from harassment, abuse, voyeurism, and ridicule by other inmates at the facility in violation of the Eighth Amendment to the United States Constitution. The district court initially issued a writ of habeas corpus, but it failed to appoint Elliott counsel at that time. The district court later dismissed the habeas petition finding that it failed to state a cause of action. Elliott sought to alter or amend the judgment, and the district court appointed him counsel and held a hearing on his motion,

1

ultimately upholding its dismissal of his habeas petition. After reviewing the record, we affirm the district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted Elliott of two sex crimes in Sedgwick County and the district court sentenced him to 576 months in prison. Elliott is currently serving his sentence at EDCF in Butler County. Given the nature of this appeal, the details of Elliott's underlying criminal convictions are not pertinent to our review, but they are outlined in our court's decision affirming his convictions on direct appeal. *State v. Elliott*, No. 79,012, 1999 WL 35814156 (Kan. App. 1999) (unpublished opinion).

The topic of this appeal is Elliott's petition for writ of habeas corpus under 2022 Supp. K.S.A. 60-1501 in Butler County District Court. He alleged in this petition that he was "unlawfully denied proper [p]rotection from sexual harassment, verbal abuse, and in fact [EDCF] has caused the abuse by denying Petitioner's repeated requests for a single man medical cell."

The following facts are uncontested:

- On August 24, 2021, Elliott received surgery for prostate cancer.
- As a result of this surgery, Elliott suffered bladder leakage and has to wear incontinence underwear and pads to absorb leaking urine.
- About a month before the surgery, the EDCF warden at the time, Jeff Butler, granted Elliott's request for a single-man medical cell for 60 days.
- One day before the surgery, Warden Butler granted Elliott's request for an extension of the single-man cell to continue "as long as [his] medical needs dictate it."

2

- About a month after the surgery, Warden Butler again granted Elliott's request for continued single-man cell placement.
- Sometime after the last extension, Warden Butler left EDCF and the then-acting warden, Deputy Warden Dale Call, denied Elliott's November 2021 request for continued single-man cell placement. Elliott was assigned to live with a cellmate from that point forward.

Elliott filed at least one grievance to EDCF, again requesting a single-man cell, which was denied. The record reflects that Elliott's most recent grievance was ultimately denied by the Secretary of Corrections (Secretary) on December 29, 2022, which Elliott claims to have received on January 20, 2023. Elliott filed his petition for a writ of habeas corpus on February 13, 2023, by placing his petition in the mail. See *Sauls v. McKune*, 45 Kan. App. 2d 915, 916, 260 P.3d 95 (2011) ("[U]nder the prison mailbox rule, a habeas petition is considered filed when it is delivered to prison authorities for mailing—not on the date it is eventually filed with the court clerk . . . .").

As a result of having a cellmate, Elliott claimed in his petition that he was denied proper housing for medical reasons, violating his right to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution, and was subjected to cruel and unusual punishment in violation of the Eighth Amendment.

On March 8, 2023, the district court issued a writ of habeas corpus and ordered the Kansas Department of Corrections (KDOC) to answer the writ within 30 days. In response, the KDOC moved to dismiss Elliott's petition. The KDOC asserted that before denying his final request for extension, Warden Call conferred with KDOC's medical provider, Centurion, regarding the medical need for single man placement. Centurion said there was never a medical order or medical requirement for Elliott to reside in a single-man cell; instead, Warden Butler had granted Elliott that temporary accommodation out of courtesy. KDOC also claimed that neither its Prison Rape Elimination Act (PREA)

3

officer nor the Unit Team Supervisor ever witnessed or received reports from Elliott regarding sexual harassment, abuse, voyeurism, or ridicule. Elliott maintained that he had filed a PREA report in 2019, alleging inappropriate conduct and retaliation by prison officials.

On May 10, 2024, the district court granted the KDOC's motion to dismiss and dissolved Elliott's writ of habeas corpus, finding that Elliott failed to state a cause of action. The court held that the record showed no evidence of harassment or abuse. The court also found the medical provider never prescribed single-cell placement for Elliott after his prostate surgery and that he received adequate medical treatment for his cancer.

Elliott timely appealed the district court's order dissolving the writ. Soon after, Elliott also asked the court to appoint him counsel and filed a pro se motion to alter or amend the district court's order. The district court appointed counsel to represent Elliott, and although initial counsel withdrew, the district court appointed a second attorney to represent Elliott in his postjudgment habeas motion.

The district court held a nonevidentiary hearing on Elliott's motion to alter or amend. After hearing arguments from both parties, the court denied Elliott's motion, finding that he recycled previously asserted arguments or advanced other arguments he could have raised previously. The district court also found it correctly applied the law in its order dissolving the writ, and that Elliott failed to show manifest injustice.

Elliott timely appeals.

4

On appeal, Elliott first argues that the district court erred by dismissing his K.S.A. 60-1501 petition without holding an evidentiary hearing. He contends his petition contained allegations which sufficiently showed shocking and intolerable conduct, or continuing mistreatment of a constitutional nature. Although he admits he has suffered no physical harm, he contends the district court erred by finding he did not suffer from sexual harassment or abuse without holding an evidentiary hearing.

*Legal Principles Applicable to Petitions under K.S.A. 60-1501*

Kansas law provides a pathway for inmates to challenge the mode or conditions of their confinement by outlining a process through which they can seek habeas corpus relief by filing a petition in the county in which they are being restrained under K.S.A. 60-1501. *Denney v. Norwood*, 315 Kan. 163, 173, 505 P.3d 730 (2022). A district court must "promptly conduct an initial assessment of the petition to determine whether a writ of habeas corpus should issue," and at this phase, "must accept all well-pled factual allegations as true." 315 Kan. at 173. "To obtain a writ, the petition must allege 'shocking and intolerable conduct or continuing mistreatment of a constitutional stature.'" 315 Kan. at 173 (quoting *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 [2009]).

As in this case, if the district court finds the petitioner might have a right to relief, it must issue a writ of habeas corpus and it must appoint counsel to assist an indigent inmate. *Denney*, 315 Kan. at 173 (citing K.S.A. 2020 Supp. 60-1503[a]). Our Supreme Court thoroughly explained the process by which a habeas corpus case is resolved in *Denney*.

"After the court has issued a writ and respondents have filed an answer, the court must 'proceed in a summary way to hear and determine' the petitioner's cause. K.S.A.

5

2020 Supp. 60-1505(a). The statutory scheme does not prescribe the type of hearing required, but it does make clear that the petitioner need not be present. K.S.A. 2020 Supp. 60-1505(a). If the petitioner is an inmate, then the district court can dismiss the writ if it finds 'the motion and the files and records of the case conclusively show that the inmate is entitled to no relief.' K.S.A. 2020 Supp. 60-1505(a).

"When entering judgment, if the court determines that the restraint is not wrongful, then the writ shall be dissolved at the cost of the plaintiff. K.S.A. 2020 Supp. 60-1505(d). If the court determines the restraint is wrongful, the judgment must either release the person from the restraint or transfer custody 'to some other person rightfully entitled' to impose the restraint. K.S.A. 2020 Supp. 60-1505(d). The court may also 'make such other orders as justice and equity . . . may require.' K.S.A. 2020 Supp. 60-1505(d).

"Viewing these provisions together and in harmony, the statutory scheme contemplates several possible avenues for resolving K.S.A. 60-1501 petitions. First, when initially presented with the petition for a writ of habeas corpus, the court may determine from the face of the petition and any attached exhibits that the petitioner is entitled to no relief and deny the motion summarily without issuing a writ or ordering the respondents to file an answer. See K.S.A. 2020 Supp. 60-1503(a).

"But if the court determines petitioner may have a right to relief, it issues a writ of habeas corpus, appoints counsel, orders the respondent to file an answer, conducts a hearing, and determines the cause. K.S.A. 2020 Supp. 60-1503(a); K.S.A. 2020 Supp. 60-1505(a); K.S.A. 22-4506(b). Again, once the court issues a writ, the statute does not specify the type of hearing required to adjudicate the habeas corpus petition—the statute merely requires the judge to proceed in a summary way to hear and determine the cause." *Denny*, 315 Kan. at 173-74.

Again, even if the district court has issued a writ, the district court can dissolve the writ if it finds "the motion and the files and records of the case conclusively show that the inmate is entitled to no relief" or that the "restraint is not wrongful." K.S.A. 2024 Supp. 60-1505(a), (d). An appellate court exercises de novo review of such a summary dismissal. *Denney*, 315 Kan. at 175.

6

*Limitations Question*

Neither the district court nor either party address the timeliness of Elliott's petition. As recited above, the Secretary denied Elliott's most recent grievance on December 29, 2022, and Elliott claims to have received that denial on January 20, 2023. He then filed his petition for a writ of habeas corpus on February 13, 2023.

Although it appears Elliott filed his petition less than a month after receiving the Secretary's denial, under K.S.A. 2022 Supp. 60-1501(b), a petition for habeas corpus relief directed to the Secretary of Corrections must be filed within 30 days of the act causing the constitutional deprivation. See *Knittel v. Kansas Prisoner Rev. Bd*., No. 111,552, 2014 WL 6777450, at *2 (Kan. App. 2014) (unpublished opinion). The Secretary's denial of his grievance, then—not Elliott's receipt of it—would start the clock running on the 30-day period. We must question, then, whether Elliott's petition was timely filed.

But other decisions by our court have viewed the 30-day period for the filing of a K.S.A. 60-1501 petition as more analogous to a statute of limitations than to a jurisdictional bar. *Guilbeaux v. Schnurr*, No. 121,032, 2020 WL 110836, *3 (Kan. App. 2020) (unpublished opinion) (citing *Knittel*, 2014 WL 6777450, at *3 ["citing other decisions of the Kansas appellate courts that view K.S.A. 60-1501(b) as a statute of limitations for habeas corpus petitions"]). Statutes of limitations do not impose jurisdictional bars—they are affirmative defenses that may be waived. *State v. Sitlington*, 291 Kan. 458, 463, 241 P.3d 1003 (2010); *Knittel*, 2014 WL 6777450, at *3.

Here, the Secretary and EDCF appellees never presented a defense based upon the timeliness of Elliott's petition, neither to the district court nor on appeal. As a result, we deem the defense waived and proceed to address his appeal.

*Elliott Was Not Medically Required to Reside in a Single-Man Cell*

In Kansas, an incarcerated person enjoys constitutional protection from cruel and unusual punishment—protection derived from both the Eighth Amendment to the United States Constitution and section 9 of the Kansas Constitution Bill of Rights. *Darnell v. Simmons*, 30 Kan. App. 2d 778, 780, 48 P.3d 1278 (2002); see also *State v. Scott*, 265 Kan. 1, Syl. ¶ 1, 961 P.2d 667 (1998) ("The Cruel and Unusual Punishment Clauses of the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights are nearly identical and are to be construed similarly."). This protection also includes the right to receive adequate medical treatment, and habeas corpus is the appropriate vehicle to claim relief from the deprivation of such medical treatment. *Darnell*, 30 Kan. App. 2d at 780.

The deliberate indifference of a prison official "to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). This "[d]eliberate indifference of a medical need contains both subjective and objective components." *Laubach v. Roberts*, 32 Kan. App. 2d 863, 872, 90 P.3d 961 (2004). The objective component is satisfied if the deprivation of the medical need is sufficiently serious, meaning that it has been diagnosed by a physician or is so obvious that even a lay person would recognize the need for medical attention. 32 Kan. App. 2d at 872. The subjective component is satisfied if a prison official has knowledge of the need and disregards an excessive risk to the inmate's health or safety. *Darnell*, 30 Kan. App. 2d at 781. "'Deliberate indifference, however, is not self-defining. It does not require a finding of express intent to harm, but "must involve more than ordinary lack of due care for the prisoner's interests or safety."' [Citations omitted.]" *Cupples v. State,* 18 Kan. App. 2d 864, 869, 861 P.2d 1360 (1993) (quoting *Berry v. City of Muskogee,* 900 F.2d 1489, 1495 [10th Cir.1990]).

So, to successfully assert a cognizable Eighth Amendment claim for failure to protect, Elliott must prove both that the denial of his medical need was sufficiently serious and that the prison officials were deliberately indifferent to his safety. *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).

Elliott fails to scale the first hurdle, as he cannot show that he was denied a medical need—the objective component. *Laubach*, 32 Kan. App. 2d at 872. Elliott argues that the prison officials have failed in their duty to provide him with adequate medical treatment by neglecting his post-operation care requirements, and that this disregard of his medical needs equates to cruel and unusual punishment and is shocking and intolerable conduct of a constitutional nature.

Elliott's claim that his medical needs were not met is solely based on the fact that he was denied a single-man cell. But he fails to demonstrate on this record that he was indeed medically required to be placed in a single-man cell. As the party alleging an error occurred, Elliott has the burden of designating a record that establishes the claimed error. Without such a record, an appellate court presumes the district court's action was proper. *State v. Liles*, 313 Kan. 772, 783, 490 P.3d 1206 (2021); see also Supreme Court Rule 6.02(a)(4), (a)(5) (2025 Kan. S. Ct. R. at 36) (appellant has the burden to furnish a sufficient record to support the claims of error; appellant's claims of error must be supported with specific citations to the record on appeal).

Here, the KDOC does not contest the facts regarding Elliott's cancer, the resulting surgery, or that he suffers from bladder incontinence as a side effect of the surgery. Even accepting his allegations as true, the KDOC shows that Elliott does not have, nor has he ever had, a medical requirement to be placed in a single-man cell, even though the first warden approved that temporary accommodation as a courtesy. See *Denney*, 315 Kan. at 173 (at the initial assessment stage of a K.S.A. 60-1501 petition, a district court must accept all well-pled factual allegations in a habeas corpus petition as true when

9

determining whether a writ of habeas corpus should be issued). The KDOC points out that Elliott's only true medical need is the incontinence underwear which was provided to him, and Elliott made no other complaints about his essential medical care. Nothing in the record before us indicates Elliott required other medical accommodation.

Likewise, the record shows that Elliott acknowledged that his health care provider, Centurion—contracted by the KDOC—denied his medical request for a single-man cell. Even during the hearing on his motion to alter or amend, Elliott presented no argument that he was being denied required care for his serious medical needs through the prison's refusal of a single-man cell. Elliott only argues that he was subjected to nonspecific harassment and ridicule which could potentially escalate to violence because the prison failed in its duty to ensure a safe and secure environment for him by denying him a single-man cell.

While we have sympathy for Elliott's condition and the side effects resulting from his surgery, he fails to establish that he had a diagnosis or an obvious medical need for a single-man cell, and that the deprivation was significantly serious. Accordingly, he cannot satisfy the objective component of the deliberate indifference standard. This failure on the first prong alone supports the dismissal of his petition, since he cannot meet both prongs of the two-part standard for deliberate indifference of a medical need. See *Laubach*, 32 Kan. App. 2d at 872; *Verdecia*, 327 F.3d at 1175.

In a single paragraph of his appellate brief, Elliott discusses due process rights under the Fourteenth Amendment. It is true that a liberty interest may be implicated where the conditions imposed by prison officials lead to a significant hardship on the inmate in relation to the ordinary incidents of prison life. *Schuyler v. Roberts*, 285 Kan. 677, 682, 175 P.3d 259 (2008). But Elliott—now represented by counsel—offers no argument or analysis whatsoever to explain how being required to share a cell implicates a liberty interest. As a result, Elliott waives or abandons any Fourteenth Amendment

challenge by failing to adequately brief the issue. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021) (issues not adequately briefed considered abandoned); *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) ("A point raised incidentally in a brief but not argued is also deemed abandoned.").

Likewise, although his initial petition raised a claim for violations of the Health Insurance Portability and Accountability Act (HIPAA) and the district court found no viable cause of action on that basis, he presents no argument, and in fact fails to mention, his HIPAA claim on appeal, and thus any such argument is waived. See *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010)(explaining that HIPPA provides no private cause of action).

For the reasons described above, the district court did not err by dismissing Elliott's K.S.A. 60-1501 petition.

### THE DISTRICT COURT'S ERROR IN INITIALLY FAILING TO APPOINT COUNSEL ON ELLIOTT'S K.S.A. 60-1501 PETITION WAS HARMLESS

Elliott next argues that the district court erred by failing to appoint him counsel upon issuing the writ of habeas corpus.

*Applicable Legal Principles*

Whether a petitioner filing relief from a writ of habeas corpus under K.S.A. 60-1501 is entitled to appointed counsel is a question of law over which this court exercises unlimited review. *Markovich v. Green*, 48 Kan. App. 2d 567, 569, 297 P.3d 1176 (2013).

According to K.S.A. 22-4506—a part of the Indigent Defense Services Act—if the court finds that the petition presents substantial questions of law or triable issues of fact, and the petitioner is determined to be indigent, the court must appoint counsel to assist

11

the petitioner. Applying K.S.A. 22-4506(a)-(b), our Supreme Court in *Denney* held that when a district court issues a writ of habeas corpus under K.S.A. 60-1503(a), the court must appoint counsel to assist an indigent inmate. 315 Kan. at 173; see *Markovich*, 48 Kan. App. 2d at 571.

*The District Court's Error Was Harmless*

Elliott reasons that because the district court issued the writ of habeas corpus, he was entitled to the assistance of counsel at that time. Instead, he was forced to represent himself in responding to the KDOC's motion to dismiss. For this reason, he argues that the district court's order dismissing his habeas petition should be remanded for further hearing with assistance of counsel.

The KDOC asserts that Elliott was not entitled to counsel because our Supreme Court's interpretation of K.S.A. 22-4506 in *Denney* does not apply here, given that Elliott is a petitioner filing for habeas corpus and is not in need of "'defense services'" or "'legal defense.'" But this argument is entirely unsupported and flies in the face of our Supreme Court's holding in *Denney*, 315 Kan. at 173. Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority is akin to failing to brief the issue. *Meggerson*, 312 Kan. at 246. The KDOC also contends that the standard prescribed in *Denney* was still met because Elliott was appointed counsel after his petition was dismissed. But this is not the required standard.

Here, the district court issued the writ of habeas corpus but failed to appoint counsel as required by K.S.A. 22-4506 and Supreme Court precedent. So, although the district court eventually appointed Elliott counsel after it dissolved the writ of habeas corpus, it nevertheless erred by not appointing Elliott counsel at the time the writ was first issued.

Even so, the district court's error was harmless. When applying the harmless error test to an error that implicates a statutory right, not a constitutional right, the party benefiting from the error—here, the KDOC—must persuade us that there is no reasonable probability that the error will or did affect the outcome of the case in light of the entire record. *State v. Campbell*, 317 Kan. 511, 518, 532 P.3d 425 (2023).

In essence, the KDOC argues that the outcome of the district court's decision would not have changed if Elliott were appointed counsel earlier, because he was entitled to no relief. And this much is true, in that we have already found above that his petition stated no viable claim.

In addition, Elliott was represented by counsel who argued the merits of his postjudgment motions at a hearing before the district court. His counsel asked the district court to hold an evidentiary hearing on Elliott's claims, reiterating all the issues Elliott presented in his earlier documents. The district court engaged counsel in multiple questions, allowing counsel to fully present the merits of those claims.

Although the district court should have appointed counsel when the writ was issued, Elliott was provided the opportunity to argue his claims through counsel on his postjudgment motions. No new evidence or novel arguments were presented to show that having counsel at the earlier date would have changed the outcome of the district court's dismissal of Elliott's petition. Nor does Elliott argue what he might have argued differently if he were represented by counsel. Reviewing the record in its entirety, we see no reasonable probability that the district court's error affected the outcome of this case. As a result, the court's error was harmless.

Affirmed.