# IN THE SUPREME COURT OF THE STATE OF NEVADA

DAVID AUGUST KILLE, SR.,
Appellant,
vs.
JULIO CALDERIN; DWIGHT NEVEN;
HIGH DESERT STATE PRISON; GREG
COX; THE STATE OF NEVADA
DEPARTMENT OF CORRECTIONS;
AND THE STATE OF NEVADA,
Respondents.

No. 72358

FILED

MAY 10 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## *ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING*

This is an appeal from a district court order granting summary judgment in a 42 U.S.C. § 1983 religious freedom action. Eighth Judicial District Court, Clark County; Michael Villani, Judge.[1]

David August Kille, Sr., is incarcerated and in protective custody at High Desert State Prison (HDSP), which is operated by Nevada Department of Corrections (NDOC). While incarcerated, Kille filed several grievances with NDOC, arguing that he had been wrongly denied the right to participate in Native American sweat lodge and sacred pipe ceremonies. NDOC denied each grievance, concluding that Kille had no right to participate in the ceremonies because he failed to provide tribal affiliation paperwork or otherwise failed to demonstrate Native American association or ethnicity pursuant to the NDOC's Religious Practice Manual.

---

[1]The Honorable Elissa Cadish, Justice, and the Honorable Abbi Silver, Justice, did not participate in the decision of this matter.

SUPREME COURT
OF
NEVADA

(O) 1947A

19-20557

Kille filed suit in district court, seeking damages and injunctive relief, alleging that the refusal of his request to participate in Native American religious ceremonies violated—among other things—his equal protection rights under the Fourteenth Amendment. Kille named as defendants HDSP; NDOC; HDSP Chaplin, Julio Calderin, in his official capacity; HDSP Warden, Dwight Neven, in his official capacity; and the Director of NDOC, Greg Cox, in his official capacity (hereinafter referred to collectively as the State). The district court granted summary judgment to the State, concluding in part that (1) Kille could not sue NDOC and HDSP, which are state entities, or the individual defendants in their official capacities under 42 U.S.C. § 1983;[2] and (2) Kille's Fourteenth Amendment claim failed because he did not set forth facts demonstrating intent or purposeful discrimination. Kille appeals.

*The district court erred by granting summary judgment to the State as to Kille's Fourteenth Amendment claim for injunctive relief against Calderin, Neven, and Cox*

Kille argues that the district court erred by granting the State summary judgment (1) dismissing his 42 U.S.C. § 1983 claims against the individual defendants in their official capacity; and (2) dismissing his equal protection claim, as having to prove his Native-American ancestry to participate in religious ceremonies was facially discriminatory and not reasonably related to the State's proffered legitimate penological interest of prison security. We agree.

"A district court's order granting summary judgment is reviewed de novo." *Paliotta v. State*, 133 Nev., Adv. Op. 58, 401 P.3d 1071,

---

[2]On appeal, Kille does not challenge the district court's dismissal of NDOC or HDSP.

1076 (2017). "Summary judgment is appropriate . . . when the pleadings . . . demonstrate that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Wood v. Safeway, Inc.*, 121 Nev. 724, 731, 121 P.3d 1026, 1031 (2005).

Under 42 U.S.C. § 1983, claimants may assert an action against an individual who, "under color of state law[,] . . . deprive[s] [them] of a right, privilege, or immunity protected by the Constitution or laws of the United States." *Butler v. Bayer*, 123 Nev. 450, 458, 168 P.3d 1055, 1061 (2007). "[T]he Equal Protection Clause entitles each prisoner to a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (internal quotations omitted). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "[W]hen the Government explicitly classifies or distinguishes among persons by reference to criteria—such as race, sex, religion, or ancestry—which have been determined improper bases for differentiation . . . [s]uch governmental action is often termed 'facially' discriminatory." *De La Cruz v. Tormey*, 582 F.2d 45, 49-50 (9th Cir. 1978). While equal protection challenges to race- or ancestry-based discriminatory policies are typically evaluated under strict scrutiny, such policies in the prison context will be upheld if they are "'reasonably related to legitimate penological interest' and not an exaggerated response to a particular concern." *Morrison*, 239 F.3d at 654 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Here, the district court reasoned that Calderin, Neven, and Cox could not be sued under 42 U.S.C. § 1983 in their individual capacities because they were state officials. However, while a state official may not be sued in an official capacity for damages under § 1983, they may be sued for injunctive relief. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." (internal quotations omitted)). Therefore, to the extent that the district court dismissed Kille's claims against Calderin, Neven, and Cox for injunctive relief, we conclude that the district court erred in ordering summary judgment on his claims.[3]

In *Morrison*, the United States Court of Appeals for the Fourth Circuit considered an analogous equal protection claim by a prisoner who argued that the prison unconstitutionally refused his request for Native American religious items based on his lack of Native American heritage. *Id.* at 651. There, the court concluded that an ancestry requirement was not reasonably related to the legitimate penological interest of prison security, as the prison had "failed to demonstrate that the requested spiritual items are any less dangerous in the hands of a Native American inmate," as it merely "demonstrated that only a few Native Americans at another

---

[3]The State also argues that Kille's claims against the individual officials were barred by qualified immunity. However, the district court made no findings in this regard, and we decline to make a determination as to the application of qualified immunity in the first instance. *See Paliotta*, 133 Nev., Adv. Op. 58 n.3, 401 P.3d at 1075 n.3 (instructing the district court to consider previously mooted qualified immunity defense on remand).

institution were offended by white inmates practicing Native American rituals." *Id.* at 660-61.

As to the substance of Kille's equal protection claim, the State does not dispute that Kille is a sincere practitioner of a Native American religion. Therefore, Kille is similarly situated to Native American inmates who wish to engage in sweat lodge and sacred pipe ceremonies. However, the NDOC policy prohibits equal consideration of Kille's request for religious exemptions based solely on his inability to prove Native American association or ethnicity and the State acknowledges that Native American inmates are the only group required to demonstrate association or ethnicity in order to participate in ceremonies. Thus, the policy is facially discriminatory because it imposes differential treatment based on ethnicity or ancestry and, as applied to Kille, denies his right to have his religious request considered equally with those prisoners who can prove Native American heritage. *See Morrison*, 239 F.3d at 661-62. While safety and security are legitimate penological interests, the State fails to present any evidence that the association or ethnicity requirement is reasonably related to that interest. The State argues that it "provided admissible evidence of actual security concerns and destruction of property rather than hypothetical concerns," but it fails to point to any specific evidence in this regard. Calderin's affidavit stating that he is "familiar that there have been incidents at various institutions where Native American inmates have destroyed their lands or their sweat lodge because they believed it has been desecrated" by non-Native American inmates entering the lands is not sufficient to show that the ethnicity-based policy of denying sweat lodge and sacred pipe ceremony practices is rationally related to the goal of prison safety and security. As explained in *Morrison*, such evidence, at best,

demonstrates that some Native Americans at other institutions "were offended by white inmates practicing Native American rituals." 239 F.3d at 661. As the policy is facially discriminatory and is not reasonably related to legitimate penological interests, we conclude that the State's association- or ethnicity-based policy violated Kille's equal protection rights. Therefore, we

ORDER the judgment of the district court AFFIRMED IN PART, REVERSED IN PART, AND REMAND this matter to the district court for proceedings consistent with this order.[4]


_____, C.J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

---

[4]Kille also challenges the district court's summary judgment award to the State on his claims for monetary damages and injunctive relief under the First Amendment and Religious Land Use and Institutionalized Person Act (RLUIPA). Because (1) Kille's cannot seek monetary damages for the State's alleged violation of his rights under the First Amendment and RLUIPA, see Will, 491 U.S. at 71 n.10 (holding that, a State and its officials acting in their official capacities are not persons for a constitutional claim under § 1983 except for injunctive relief); Pugh v. Goord, 571 F. Supp. 2d 477, 507 (S.D.N.Y. 2008) (stating that RLUIPA does not permit a private action for monetary damages against individual defendants); and (2) we find that the State violated Kille's Fourteenth Amendment rights, thereby providing him with his requested injunctive relief, we will not consider his other claims.

cc: Hon. Michael Villani, District Judge
Special Public Defender
Attorney General/Carson City
Attorney General/Las Vegas
Barbara Buckley
Anne R. Traum
Snell & Wilmer, LLP
Eighth District Court Clerk

PICKERING, J., concurring in part and dissenting in part:

The record in this case establishes that: (1) Mr. Kille has been in protective segregation at the High Desert State Prison (HDSP) since 2013; (2) due to the large inmate population and number of diverse faith groups at HDSP, this facility requires at least five inmates of any particular faith group to schedule a weekly group service ("the five-inmate policy"); (3) in implementing its five-inmate policy, HDSP does not intermingle general population and protective segregation inmates; (4) it was not until 2015 that five inmates in protective segregation at HDSP asked to add a Native American group service to the institution's chapel schedule, which request the prison officials honored; and (5) after the Native American group service for inmates was added in 2015 but before filing his complaint, Kille did not request to participate in the weekly group services.

HDSP has a legitimate penological interest in requiring at least five inmates to schedule a group service and in separating general population and protective segregation inmates for purposes of this policy. *See Santos v. Isidro Baca*, No. 2:11-CV-01251, 2017 WL 1240192, at *5-7 (D. Nev. Mar. 29, 2017) (upholding HDSP's five-inmate policy under the factors stated in *Turner v. Safley*, 482 U.S. 78 (1987)). Indeed, Kille concedes the point. See Appellant's Reply Brief, p. 11 n.4 ("Mr. Kille only appeals the grant of summary judgment as it pertains to the race requirement established by NDOC. *He is not challenging the grant of summary judgment in regards to the five inmate requirement established by NDOC.*"). Also, Kille is not aggrieved to the extent HDSP scheduled group services for

inmates in protective segregation that he chose not to attend. *See Schwartz v. Lopez*, 132 Nev. 732, 743, 382 P.3d 886, 894 (2016) (the doctrine of standing requires the party asserting a claim to have an actual, demonstrable injury that directly resulted from the conduct at issue to sustain a lawsuit). Together, these principles adequately support summary judgment on the the 2013-2015 grievance denials that Kille challenged in his complaint.

Kille represented himself in district court. My colleagues suggest that, despite the limited claims pleaded in his complaint, Kille *may* have a claim based on respondents' refusal to accommodate his post-complaint 2016 request to attend services due to his lack of Native American ancestry and tribal affiliation. *Cf. Brown v. Schuetzle*, 368 F. Supp. 2d 1009, 1023-24 (D.N.D. 2005) (invalidating policy excluding non-Native Americans who sincerely believe in Native American theology from sweat lodge ceremony) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 659 (4th Cir. 2001) ("[W]e agree with the district court's conclusion that prison officials cannot measure the sincerity of Morrison's religious belief in Native American Spirituality solely by his racial make-up or the lack of his tribal membership.")). I do not disagree that, under the law stated in cases like *Morrison* and *Brown*, HDSP cannot accept that Kille's Native American faith is sincere, yet without more than the limited record this case contains, refuse to allow him to attend services or ceremonies open to other inmates in protective segregation solely because Kille lacks Native American blood or tribal affiliation. Because HDSP's five-inmate policy and Kille's failure to ask to join the group services once they became available independently defeat the claims he asserted in his complaint, in my view, to prevail on remand, Kille will need to amend his complaint. At that point, he must

plead and prove that HDSP denied him access to Native American ceremonies or services available to other inmates in protective segregation consistent with the five-inmate policy based solely on his lack of Native American blood or tribal affiliation, without adequate justification.

The majority's order of reversal and remand does not make these points clear. For that reason, and to express my concern with the scope of the remand being ordered in this case, I write separately and respectfully concur in part and dissent in part.

_Pickering_____, J.
Pickering